Michelle SMITH, individually and as the Personal Representative of the Estate of William Smith, Amanda Smith and William Smith, Jr., Plaintiffs,

v.

Richard VESTAL, Defendant and Appellee;

CITY OF WILLISTON, N.D., a municipal corporation, Burlington Northern Railroad Corporation, and Braun Engineering Testing of North Dakota, Inc., Defendants,

and

Braun Engineering Testing of North Dakota, Inc., Third–Party Plaintiff and Appellant,

v.

RED RIVER SUPPLY, INC., Third–Party Defendant and Appellee.

Civ. No. 920104.

Supreme Court of North Dakota.

Dec. 24, 1992.

David D. Beaudoin (argued), Bucklin & Klemin, Bismarck, for defendant, third-party plaintiff and appellant Braun Engineering Testing of North Dakota, Inc.

Pringle & Herigstad, Minot, for defendant and appellee Richard Vestal and third-party defendant and appellee Red River Supply, Inc.; argued by David J. Hogue.

ERICKSTAD, Chief Justice.

■ Braun Engineering Testing of North Dakota, Inc., (Braun) appeals from an order and summary judgment entered by the District Court for Williams County which dismissed its cross-claim against Richard Vestal and its third-party claim against Red River Supply, Inc. (Red River).[1] The sole issue on appeal is whether or not a third-party indemnity and contribution action for fraud and deceit against an

employer is barred by the exclusive remedy provisions of the North Dakota Workers' Compensation Act, Chapters 65–04 and 65–05, N.D.C.C. We hold that it is barred, and affirm the district court's order and summary judgment.

On April 5, 1988, William Smith was killed while working as an employee of Red River. The facts preceding his death form the basis of this appeal. Because this is an appeal from a summary judgment, we must view the facts in the light most favorable to Braun, the opposing party.

"Summary judgment is proper when, after viewing the evidence in the light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Volk v. Wisconsin Mortgage Assurance Co.*, 474 N.W.2d 40 (N.D.1991)."

*Rott v. Connecticut Gen. Life Ins. Co.*, 478 N.W.2d 570, 573 (N.D.1991). The following recitation of facts is cast in such a light.

In the early summer of 1987, Vestal, as president and owner of Red River, purchased an old oil well drilling substructure and some used cement storage silos. He intended to mount the silos on the substructure and use them to store dry cement for resale by Red River. In conjunction with this project Vestal contacted Braun, a geotechnical engineering firm, to provide soils testing analysis and advice concerning the earth foundation supporting the substructure. Vestal sought further advice from Braun regarding construction of the dry cement storage facility itself. Braun allegedly confined its advice to the foundation and directed Vestal to hire a structural engineer to approve the structure.

For several months following Vestal's initial contact with Braun, he persisted in requesting structural advice from Braun. At one point, Braun facilitated a meeting between itself, Vestal, and Doug Loos, a structural engineer. Braun contends that during this meeting Loos and Braun suggested that Vestal abort the project of plac-

---

1. Richard Vestal, at all relevant times to this case, was the president and owner of Red River.

Thus, we will treat Vestal and Red River as one entity throughout this opinion.

ing the silos on the substructure. Both believed that the existing frame might not withstand the forces caused by wind. Braun again informed Vestal that it approved of the foundation, but not the structure.

Simultaneous with the above occurrences, Vestal received a permit from the city of Williston approving only the base of the loading dock for the silos. Later in the summer of 1987, the city served Vestal with an order to cease and desist all activities of installing the silos on the loading dock. The city informed Vestal that he needed a separate permit to attach the silos to the substructure. Early in December of 1987, the city advised Vestal that he had to provide the city with a report approved by a structural engineer before receiving its acceptance of the project.

Braun asserts that Vestal, seven days subsequent to receiving this information, fraudulently indicated to Braun that everything had been inspected and approved. In fact, Vestal had never asked a structural engineer to provide the city with a plan, nor had Vestal applied for a permit from the city. Braun contends that based upon Vestal's fraudulent misrepresentations, it offered Vestal advice about the type of welding necessary to secure the silos to the substructure. Braun further asserts that the welding was not done in compliance with its instructions, and that the welding project was never fully finished. Yet, sub-

sequent to the welding, the silos were utilized by Red River to store dry cement for resale.

In April of 1988, while under the employ of Red River, Smith climbed to the top of one of the silos to monitor the filling of the silo with dry cement. Although the silo had fill-level indicators (bindicators), a series of lights mounted on the outside of the silo that electronically monitored the fill level and allowed observation from the ground during filling, they were never installed. While Smith was on top of the 60-foot structure, the silo collapsed, falling to the ground, killing Smith. The incorrectly welded beams supporting the silos had rotated inward, causing the collapse.

Smith's estate brought an action against Vestal, the city of Williston, Burlington Northern Railroad, and Braun Engineering. Braun, in its answer, brought a cross-claim against Vestal and a third-party claim against Red River. Braun asserted that it was entitled to contribution and indemnification from Red River and Vestal for their negligent conformance to its welding instructions and for their fraudulent and deceitful misrepresentations which lead to Braun's offering of those instructions. Both Vestal and Red River brought motions for summary judgment. They based their motions on the exclusive remedy provisions of North Dakota's Workers' Compensation Act.[2] The district court granted

---

2. There are four statutes addressing the relief provided by employers under the North Dakota Workers' Compensation Act that are relevant to this appeal. These statutes have been designated as the exclusive remedy rule of the Workers' Compensation Act. The first statute provides:

"*Purposes of compensation law—Police power.* The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and *to the exclusion of every other remedy, proceeding, or compensation,* except as otherwise provided in this title, and to that end, *all civil actions and civil claims for relief for such personal injuries and all jurisdiction of the courts* of the state over such causes are

abolished except as is otherwise provided in this title."
Section 65–01–01, N.D.C.C. (emphasis added).
The second statute reads:

"*Contributing employer relieved from liability for injury to employee.* Where a local or out-of-state employer has secured the payment of compensation to his employees by contributing premiums to the fund, *the employee, and the parents of a minor employee, or the representatives or beneficiaries of either, have no claim for relief against such contributing employer or against any agent, servant, or other employee of such employer for damages for personal injuries, but shall look solely to the fund for compensation.*"
Section 65–01–08, N.D.C.C. (emphasis added).
The next statute reads:

"*Complying employers not liable for injuries to or deaths of employees—Common-law actions barred.* Employers who comply with the provisions of this chapter *shall not be*

those motions, and eventually this appeal followed.[3]

We have recognized several times that, ordinarily, an injured employee's only remedy against an employer complying with the Workers' Compensation Act is provided under the provisions of the Act. "Generally, when an employer is in compliance with the workmen's compensation statutes, the employee's exclusive remedy against the employer is limited to recovery under the workmen's compensation statutes. *Gernand v. Ost Services, Inc.*, 298 N.W.2d 500, 504 (N.D.1980); §§ 65–01–01, 65–01–08, 65–04–28, and 65–05–06, N.D.C.C." *Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 343 N.W.2d 334, 338 (N.D.1983). *See Barsness v. Gen. Diesel & Equip. Co.*, 422 N.W.2d 819, 822 (N.D. 1988); *Latendresse v. Preskey*, 290 N.W.2d 267, 269 (N.D.1980); *Stine v. Weiner*, 238 N.W.2d 918, 925 (N.D.1976); *Boettner v. Twin City Constr. Co.*, 214 N.W.2d 635, 640 (N.D.1974).

Of more significance to this case, we have opined that, normally, third parties may not seek indemnification or contribution from an employer that has complied with the workers' compensation statutes. *See Stuhlmiller v. Nodak Mutual Ins. Co.*, 475 N.W.2d 136, 139 (N.D.1991); *Barsness v. Gen. Diesel & Equip. Co.*, 422 N.W.2d at 822–24; *Barry v. Baker Elec. Co-op., Inc.*, 354 N.W.2d 666, 668 (N.D. 1984); *Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 343 N.W.2d at 344–45; *Gernand v. Ost Services, Inc.*, 298 N.W.2d 500, 505 (N.D.1980); *Sayler v. Holstrom*, 239 N.W.2d 276, 277 (N.D.1976).

When initially addressing the issue, we said:

"In the instant case, the right of contribution provided under § 32–38–01, N.D.C.C., may become available to [the third-party tortfeasor]. However, the exclusive remedy provisions of the workmen's compensation statutes operate to foreclose the [employer's] liability for contribution. *White v. McKenzie Electric Cooperative, Inc.*, 225 F.Supp. 940 (D.N.D.1964). Section 65–05–06, N.D.C.C., explicitly states that payment of compensation 'shall be in lieu of any and all rights of action whatsoever against the employer'. The majority of jurisdictions have held that the employer whose concurring negligence contributed to the employee's injury cannot be sued or joined by the third party as a joint tortfeasor, whether under contribution statutes or at common law, because the employer is absolutely liable irrespective of negligence. [Footnote omitted.] Any change in the exclusive remedy provisions and in the subrogation provisions is more appropriately a matter for the legislature's consideration."

*Gernand v. Ost Services, Inc.*, 298 N.W.2d at 505.

■ Thus, as a general rule, employees and third-party tortfeasors are limited in recovery against the employer by the exclusive remedy provisions of the Workers' Compensation Act. As with every rule, however, there are exceptions. In *Schlenk v. Aerial Contractors, Inc.*, 268 N.W.2d 466 (N.D.1978), we began to identify one such exception.[4] The plaintiff/employee in

---

liable to respond in damages at common law or by statute for injury to or death of any employee, wherever occurring, during the period covered by the premiums paid into the fund."
Section 65–04–28, N.D.C.C. (emphasis added). The last provision follows:
"*Payment of compensation in lieu of claim for relief against employer.* The payment of compensation or other benefits by the bureau to an injured employee, or to his dependents in case death has ensued, *are in lieu of any and all claims for relief whatsoever against the employer of the injured or deceased employee.*"
Section 65–05–06, N.D.C.C. (emphasis added).

3. The complete procedural history of this case is very complex, and not entirely relevant to the present appeal. We have had the parties before us once before in *Smith v. Vestal*, 456 N.W.2d 502 (N.D.1990). However, that appeal was dismissed because the district court certified the same issue we are faced with here for appeal before the entire case was completed.

4. In *Schlenk*, the plaintiff was employed as a lineman by the employer. He was injured while working alone, operating a wire winder used to guide dismantled telephone wires onto a spool. The plaintiff contended that the wire winder was hazardous, and that the employer was aware of the dangerous condition but did

*Schlenk* unsuccessfully alleged that the employer's conduct causing the injury reached the level of intent to injure. Disagreeing with the accusation, we were not required to address the remainder of the plaintiff's argument that intent to injure presented an exception to the workers' compensation exclusive remedy rule. However, we did say:

> "This is not to say that public policy might not require the finding of an exception where the circumstances involve an actual intent to injure, such as in the case of an intentional assault and battery, or where the negligence is so gross as to be equivalent to an actual intent to injure. This case does not come within either of those possible exceptions."

*Id.* at 471.

We were faced with the same argument in *Schreder v. Cities Serv. Co.*, 336 N.W.2d 641 (N.D.1983).[5] Again, we did not find the facts to rise to the level of intentional injury. However, we went on to distinguish intentional injury from other intentional torts, completely closing the door on the latter as being an exception to the exclusive remedy rule.

> "Even though we leave open the issue of whether or not an employee may institute a civil action for an intentional injury, we cannot agree with that portion of the *Blankenship* decision which holds that an employee covered by Workmen's

Compensation may institute a civil action for an intentional tort, whether or not there was an actual intent to injure the employee."

*Id.* at 643.[6]

In both *Schlenk* and *Schreder* we expressly refused to allow an exception to the exclusive remedy rule for any conduct less than an actual intent to injure. We quoted a treatise on workers' compensation that specifically requires actual intent to injure before allowing a common law action against the employer.

> "Thus in *Schlenk* we quoted from Larson, *The Law of Workmen's Compensation*, Vol. 2A, § 68.13 (1976), on the subject of a common-law action by an employee against his employer for damages for intentionally caused injuries as follows:
>
> > '§ 68.13 *Necessity for actual intent to injure*
> >
> > 'Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.

nothing to alleviate the danger. Instead, the employer allowed the plaintiff to operate the hazardous wire winder by himself. The plaintiff maintained that this conduct constituted an intent to injure on the employer's behalf.

**5.** The plaintiff in *Schreder* was the deceased employee's widow. The employee worked on an oil derrick as a driller for the employer. At the time of his death, the employee was operating the controls regulating the upward and downward movements of the traveling blocks suspended by cable from the top of the oil derrick. He was killed while lowering drilling pipe into the hole; the traveling blocks landed on the floor, tipped over, and crushed him. His widow, in her suit against the employer for actual intent to injure, alleged that the employer knew or should have known that the hydromatic brake was not functioning properly. In support of her allegation, she pointed to the fact that prior to the employee's death, the drilling

supervisor instructed the drillers to use a wooden hammer handle as a wedge to attempt to keep the brake engaged.

**6.** *Blankenship v. Cincinnati Milacron Chemicals*, 433 N.E.2d 572 (Ohio 1982), is a case on which the plaintiff in *Schreder* relied, and it is also relied on by Braun in the present case. We summarized the holding of *Blankenship* in *Schreder* before rejecting it. The summary is as follows:

> "In *Blankenship*, a majority of the Ohio Supreme Court concluded that the Ohio Constitution and statutes do not bestow upon employers immunity from civil liability for their intentional torts and an employee may therefore resort to a civil suit for damages. We believe, for the purposes of our Act, that there is a distinction between an intentional injury and an intentional tort, i.e., not all intentional *torts* are intentional *injuries*."

*Schreder v. Cities Serv. Co.*, 336 N.W.2d at 643.

'Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.'

"We continue to agree with Larson that an actual intent to injure is necessary to move an injury out of the category of accidental injury and into the category of genuine intentional injury."

*Schreder v. Cities Serv. Co.,* 336 N.W.2d at 644.

As in *Schreder* and *Schlenk,* the facts in this case do not disclose the requisite intent to injure that would rise to the extent necessary to be an exception to the exclusive remedy rule. Accordingly, Braun may not bring a common-law fraud and deceit action under such an exception, if in fact there is such an exception in North Dakota.

Braun attempts to broaden our holdings in *Schreder* and *Schlenk* by pointing out that the plaintiffs in those cases were the employees, whereas here a third party is involved, a party outside of the employer/employee relationship addressed by the workers' compensation statutes. Thus, Braun argues, the exception should be extended to include cases of fraud committed by employers against third parties. We do not agree. As we have previously held, an intentional tort alone, whether against an employee or against a third party, will not pierce the barrier surrounding a complying employer's immunity from common-law actions.

█ The public policy encompassing workers' compensation statutes dictates a broad interpretation of the exclusive remedy rule. If the barrier is to be pierced, it should be done by the legislature, which is the policy-making body of our government.

"As noted earlier, North Dakota has a long-standing and strong public policy interest in making workmen's compensa-tion the exclusive remedy against an employer in the case of an injured employee. Application of [contribution by an employer to third parties], *even if limited in scope,* would be inimical to that public policy. An employee's choice of benefits is insufficient justification to alter North Dakota's guaranty of protection to employers contributing to North Dakota workmen's fund."

*Barry v. Baker Elec. Co-op., Inc.,* 354 N.W.2d at 673 (emphasis added).

A second exception to the exclusive remedy rule occurs when the employer enters into an express contract of indemnification between itself and the third-party tortfeasor. When this happens, the employer's immunity from suit by the third party disappears and a common-law suit can be maintained.

"We decline to follow the [minority], and instead align ourselves with the majority rule that a contract of indemnification is an exception to the exclusive remedy rule because it is an action on a separate legal claim based upon a contractual obligation rather than 'at common law or by statute for injury to or death of any employee.' Section 65–04–28, N.D.C.C. That result is consistent with the implication in *Sayler v. Holstrom, supra,* that an independent contractual relationship is sufficient to permit indemnity against the employer. We conclude that our workers['] compensation statutes do not prohibit enforcement of an employer's contractual agreement to indemnify a third-party tortfeasor."

*Barsness v. Gen. Diesel & Equip. Co.,* 422 N.W.2d at 824.

There is no express contract of indemnification between Braun and Red River and Vestal. Braun suggested at oral argument that perhaps there might be an implied duty of indemnification when an employer lies to a third party. However, this Court has decided to the contrary on such a premise in previously decided cases.

"[W]e have recognized that there are exceptions to the exclusive remedy rule [*Gernand v. Ost Services, Inc., supra*], and we have said that in the absence of

an explicitly contractual duty to indemnify, *an independent duty to indemnify will not be inferred* unless the party seeking indemnity clearly shows a well-settled duty between the employer and a third party. *Sayler v. Holstrom,* 239 N.W.2d 276 (N.D.1976); *see United Pacific Insurance Co. v. Aetna Insurance Co.,* 311 N.W.2d 170 (N.D.1981); *see also, Sorensen v. Tenneco Oil Co.,* 609 F.Supp. 838 (D.N.D.1985); *White v. McKenzie Electric Cooperative, Inc.,* 225 F.Supp. 940 (D.N.D.1964)."

*Barsness v. Gen. Diesel & Equip. Co.,* 422 N.W.2d at 823 (emphasis added).

Braun has failed to illustrate to this Court a "well-settled duty" between itself and Red River and Vestal that would permit us to infer an independent duty to indemnify on Red River and Vestal's part. The parties' relationship is simply that of a service provider and a service consumer. Although we disapprove of the alleged conduct on Vestal's behalf, there is nothing in the facts which heightens the responsibility of one party to the other. As a result, this second exception to the exclusive remedy rule is also unavailable to Braun.

For the foregoing reasons, we affirm the district court's order and summary judgment holding that the exclusive remedy rule of the Workers' Compensation Act commands a dismissal of Braun's cross-claim against Vestal and third-party claim against Red River.

VANDE WALLE, LEVINE and JOHNSON, JJ., and DONALD L. JORGENSEN, District Judge, concur.

DONALD L. JORGENSEN, District Judge, sitting in place of MESCHKE, J., disqualified.