Filed 11/6/97 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1997 ND 203

Joshua L. Zimmerman, by

his natural parents and

guardians, Thomas and

Patricia Zimmerman,   Plaintiff and Appellant

 v.

insert party~Valdak Corporation, a

North Dakota corporation,   Defendant and Appellee

Civil No. 970007

 Appeal from the District Court for Grand Forks County, Northeast Central Judicial District, the Honorable Bruce E. Bohlman, Judge.

 AFFIRMED.

 Opinion of the Court by Maring, Justice.

 Richard Clapp and Jay Fiedler of Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, P.O. Box 5758, Grand Forks, N.D. 58206-

5758, for plaintiff and appellant.

 John Moosbrugger of Moosbrugger, Dvorak & Carter, P.O. Box 5159, Grand Forks, N.D. 58206-5159, for defendant and appellee.

 Leo F. J. Wilking, Special Assistant Attorney General, P.O. Box 2626, Fargo, N.D. 58108, as amicus curiae.

Zimmerman v. Valdak Corp.

Civil No. 970007

insert case number~

 MARING, Justice.

[&P&1]  Joshua Zimmerman appeals from the district court’s judgment dismissing his civil lawsuit against his employer, Valdak.  We affirm.

[&P&2]  On November 7, 1992, fifteen-year-old Joshua Zimmerman was injured while employed at Valley Dairy Car Wash in Grand Forks when his right arm was torn from his body.  The injury occurred while Joshua was using an industrial centrifuge extractor, a laundry machine that uses centrifugal force to spin dry towels.  Joshua was not assigned to work in the area where the machine was located and there was a clear warning on the machine to “keep your hands out of the machine.”

[&P&3]  Under normal conditions, a person operating the extractor would wait until the towels were dry, pull the brake to stop the internal drum, open the lid, and remove the towels.  The extractor had an interlock system to prevent the lid from opening before the drum stopped spinning.  When Joshua was injured, the interlock system had been inoperative for months.  Employees were opening the lid and reaching in for the towels while the drum was still spinning.

[&P&4]  Joshua sought compensation from the North Dakota Workers' Compensation Bureau.  The Bureau accepted liability and paid associated medical expenses.  The Bureau, however, denied disability and vocational rehabilitation benefits, finding he had not sustained a catastrophic injury under N.D.C.C. &S& 65-05.1-06.1(2)(c)(1) and that Joshua could earn wages equal to his pre-

injury wages as a pizza delivery boy.  Joshua did not appeal the Bureau's decision.

[&P&5]  In 1995, Thomas and Patricia Zimmerman, on behalf of their son, Joshua, brought an action in district court against his employer, Valdak.  Valdak moved for summary judgment, accompanied by the Bureau as amicus curiae.  On May 15, 1995, in its memorandum opinion, the district court granted summary judgment to Valdak, based on the “exclusive remedy” provision of the North Dakota Workers' Compensation Act, which prohibits injured employees from suing their employer in a court of law.  Joshua moved for reconsideration, but the court denied his motion.

[&P&6]  Joshua appeals, arguing the exclusive remedy provision should not bar an injured employee from seeking compensation by an independent civil action when an injury is caused by an intentional tort.

[&P&7]  The North Dakota’s Workers' Compensation Act was created to provide sure and certain relief to employees.  Section 65-01-01, N.D.C.C., explains:

[T]he prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided . . . .

[&P&8]  “The concept behind workers’ compensation is that workers forego suing their employers when injured on the job, in exchange for an employer’s agreement to cover those injuries, through payment of premiums to the Workers’ Compensation Bureau.”  Susan J. Anderson & Gerald DeLoss,

Are Employees Obtaining “Sure and Certain Relief” Under the 1995 Legislative Enactments of the North Dakota Workers’ Compensation Act?
, 72 N.D. L. Rev. 349, 349 (1996).  “Under the Act, if an employer contributes premiums to the [Workers'] Compensation Fund to secure the payment of compensation to his employees, a [worker] injured in the course of his employment has no right of action against the contributing employer or any agent, servant, or other employee of such employer for damages for personal injuries.”  
Schreder v. Cities Service Co.
, 336 N.W.2d 641, 642 (N.D. 1983).

[&P&9]  Four separate sections in the North Dakota Century Code state that workers’ compensation is the exclusive remedy for injured employees.
(footnote: 1)  Valdak argues those sections explicitly bar any civil remedy.  According to Valdak, the legislature has the authority to create an exception to the exclusive remedy provision, not the judiciary.

[&P&10]  We, thus, are asked to decide whether the North Dakota Workers' Compensation Act bars a civil remedy against an employer for an intentional tort.  If we find that it does not, we must determine what constitutes an intentional tort, and whether Joshua’s claim was properly dismissed on summary judgment.

I

[&P&11]  Most states do not bar common-law suits alleging intentional torts by employers, despite the exclusive remedy provisions in their Workers' Compensation Acts.  
Fisher v. Shenandoah Gen. Const. Co.
, 498 So.2d 882, 886 (Fla. 1986);
Beauchamp v. Dow Chemical Co.
, 398 N.W.2d 882, 889 (Mich. 1986) (citing Petramalo, “Employer total liability,” 1986 ABA National Institute on Workers’ Compensation, p. 167).   For example, courts in North Carolina, Ohio, Michigan, Minnesota, Montana, Indiana, Arkansas, Connecticut, and Vermont all acknowledge an exception to their workers’ compensation exclusive remedy provisions for certain intentional torts.
(footnote: 2)  Although many of those state legislatures have since statutorily adopted intentional tort exceptions following their respective courts’ action, it was the judiciary that determined the exclusive remedy provision did not include intentional torts committed by an employer.  
See
,
e.g.
,
Travis v. Dreis and Krump Mfg. Co.
, 551 N.W.2d 132, 139 (Mich. 1996) (discussing the intentional tort exception in Michigan after the legislature explicitly statutorily adopted a stricter version of the court-recognized exception).

[&P&12]  The rationale behind adopting the intentional tort exception for a majority of these states was that workers’ compensation laws were based on accidental injuries, not on intentional misconduct.  
See
,
e.g.
,
Heskett v. Fisher Laundry & Cleaners Co.
, 230 S.W.2d 28, 30 (Ark. 1950).  Courts did not find it logical to include immunity for intentional torts under the penumbra of accidents:

Because the Legislature intended to limit and diffuse liability for accidental injury by no means suggests the Legislature intended to limit and diffuse liability for intentional torts.  Accidents are an inevitable part of industrial production, intentional torts by employers are not.

Beauchamp v. Dow Chemical Co.
, 398 N.W.2d 882, 889 (Mich. 1986).

[&P&13]  The North Dakota Workers' Compensation Act specifically pertains to accidents in the workplace.  Zimmerman's injury and the acceptance of Zimmerman's claim by the Bureau occurred in 1992, and, therefore, the provisions of the Workers' Compensation Act in effect in 1992 are applicable.  Section 65-01-02(9)(1992) states a “‘[c]ompensable injury’ means an injury by accident arising out of and in the course of employment which must be established by medical evidence supported by objective medical findings.”  An intentional tort is not an accident.  
Beauchamp
, 398 N.W.2d at 888.

[&P&14]  Specifically excluded under our Act, are claims by employees for willfully self-inflicted injuries.  Section 65-01-02(9)(b)(1), N.D.C.C.
(footnote: 3), explains that a compensable injury does not include a willfully self-inflicted injury, or an injury caused by the employee’s willful intention to injure or kill another.  It seems incongruous to indemnify an employer from the consequences of his intentional tort, when an employee is not so indemnified.

[&P&15]  Other strong public policy considerations support permitting an intentional tort cause of action.  An underlying objective of workers’ compensation is to promote a safe work environment.  Affording employers immunity for intentional acts does not promote that objective.  If intentional torts were covered by workers' compensation, it would allow “an intentional tortfeasor to shift his liability to a fund paid for with premiums collected from innocent employers.”  
Collier v. Wagner Castings Co.
, 408 N.E.2d 198, 203 (Ill. 1980).  Employers would not be held individually responsible for their intentional actions.  In effect, it would allow an employer to buy the right to hit an employee.  
Sitzman
, 718 P.2d at 659.  Furthermore, workers' compensation is founded on the principle of insurance.  Providing immunity to employers for intentional torts is inconsistent with North Dakota insurance law that generally denies coverage for willful acts.  N.D.C.C. &S& 26.1-32-04 (stating “[a]n insurer is not liable for a loss caused by the willful act of the insured . . .”).

[&P&16]  Recognizing an intentional tort cause of action is compatible with some of our recent workers' compensation cases.  In
Schlenk v. Aerial Contractors, Inc.
, 268 N.W.2d 466, 471 (N.D. 1978), we concluded that the language of the Workers' Compensation Act in effect in 1974 did not provide an exception for intentional injuries to an employee by his employer.  We noted, however, the definition of injury had been amended by the 1977 Legislature
(footnote: 4) and  public policy may in the future require the finding of an exception  in circumstances involving an actual intent to injure or “where the negligence is so gross as to be equivalent to an actual intent to injure.”  
Id.
 In
Schreder
, 336 N.W.2d at 643, we determined it was clear the alleged injury was the result of an accident and not an intent to injure and we declined to decide whether a public-policy exception exists or to construe the Act as amended.  We again left open the possibility of an intentional injury exception.  We stated, “[w]e do not today decide if the [Workers'] Compensation Act itself or a public-policy exception to the prohibitions of the Act permits an action by an employee against his employer or co-

employee for intentional injury.”  
Id.
 Finally, in
Smith v. Vestal
, 494 N.W.2d 370 (N.D. 1992), we discussed the difference between an intentional tort exception and an intentional injury exception, but again determined the alleged facts did not constitute the requisite intent to injure.

[&P&17]  Joshua asks us to adopt an intentional tort exception using a substantial certainty standard.  Joshua argues Valdak's behavior was intentional because it was substantially certain to injure an employee.  When we have previously discussed the possibility of an intentional tort exception, we have stated that for an employer to commit an intentional tort, the employer must have intended the injury.  
Schlenk
, 268 N.W.2d at 471;
Schreder
, 336 N.W.2d at 644;
Vestal
, 494 N.W.2d at 374-75.  Although to date we specifically declined to recognize an exception, we discussed what the standard would be if we had the exception, suggesting the requisite standard would be “intent to injure.”

[&P&18]  In determining what may constitute an intentional tort in this context, we note there is a definite split among the states in defining an intentional tort. Some courts have relied on the definition of an intentional tort found in the Restatements and other tort treatises.  
See

Restatement (Second) of Torts
&S& 8A, comment b (1965);
W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Torts
&S& 8, at 35 (5th ed. 1984).  According to the
Restatement (Second) of Torts
&S& 8A, comment b (1965),

Intent is not [] limited to consequences which are desired.  If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

Similarly,
Prosser and Keeton on Torts
&S& 8, at 35 (5th ed. 1984) asserts:

[I]ntent is broader than a desire or purpose to bring about physical results.  It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does.

[&P&19]  Courts relying on these sources have determined that if the employer intended the act that caused the injury or knew the injury was substantially certain to occur from the act, the employer has committed an intentional tort.  
See
,
e.g.
,
Woodson v. Rowland
, 407 S.E.2d 222, 228 (N.C. 1991).  Specifically, West Virginia, Florida, North Carolina, Ohio, Michigan, South Dakota, Texas, New Jersey, and Louisiana apply the substantial certainty test or a test similar to it, in determining whether an employer committed an intentional tort.
(footnote: 5)
[&P&20]  Some courts have limited the recovery to the so-called “true intentional torts.”  
See
,
e.g.
,
Kittell
, 417 A.2d at 927.  A majority of states such as Idaho, Illinois, New Mexico, Pennsylvania, South Carolina, Utah, and the District of Columbia have refused to adopt the substantial certainty test as an exception to the exclusivity of Workers' Compensation.
(footnote: 6)  These courts allow an employee to pursue a civil cause of action only if the employer intended the act and intended an injury.  In applying that definition, many of those courts relied on
Arthur Larson, Larson’s Workers’ Compensation Law,
Vol. 6, &S& 68.13 (1997), suggesting an intentional tort exception should require nothing short of a “genuine intentional injury.”

[&P&21]  We believe the latter definition reflects the underlying purpose of exclusivity of workers' compensation in North Dakota and conforms to that compensation policy.  We conclude the North Dakota Workers' Compensation Act does not preclude recovery for true intentional injuries and an employee can pursue a civil cause of action against his employer for a true intentional injury.  An employer is deemed to have intended to injure if the employer had knowledge an injury was certain to occur and willfully disregarded that knowledge.
(footnote: 7)
[&P&22]  Applying the intentional injury test, we believe Joshua has not alleged sufficient facts to state a claim under the standard.  In support of his case, Joshua directs the court to an investigation performed by the Occupational Safety and Health Commission which determined Valdak's actions were willful violations of safety provisions.  In the record, the Commission's decision specifically notes that Valdak's management knew the interlock was inoperative, but failed to repair it.  Valdak's manager, Joseph Strang, testified before the Commission that he did not have it repaired because it would have shut down the machine and the car wash for approximately an hour and a half.  According to an affidavit of Steven Akerlind, an owner of Dakota Laundry Equipment, Akerlind had told Strang the extractor should not be used in its present condition because it was substantially certain to injure someone.

[&P&23]  However, at the bottom of the lid of the extractor is a warning:  "Never insert hands in basket if it is spinning even slightly."  The record further reveals management had even warned employees that if they put their arm in the machine, they could lose it.  In addition, Valdak had no previous OSHA violations, and no one had been injured previously using the machine.

[&P&24]  Joshua's case is somewhat factually analogous to
Pendergrass v. Card Care, Inc.
, 424 S.E.2d 391, 393 (N.C. 1993).  In
Pendergrass
, the employee received serious injury when his arm was caught in an inspection machine.  
Id.
 The machine was lacking safety devices, including necessary guards to protect from known "pinch-points," in violation of OSHA requirements and industry standards.  
Id.
 The
Pendergrass
court stated that the conduct involved did not even rise to the level of willfulness, even though it may have been known that certain dangerous parts of the machine were unguarded.  
Id.
at 394.

[&P&25]  In
Echols v. Zarn, Inc.
, 448 S.E.2d 289, 297 (N.C. Ct. App. 1994), aff'd, 463 S.E.2d 228 (N.C. 1995), an employee was injured when her hand was caught under a safety gate in a molding machine.  The employee was instructed to reach under the gate because it was easier to operate the machine this way.  
Id.
at 291-

92.  No operator had been injured by operating the machine in this manner.  
Id.
at 293.  The machine had no visible or audible warning signals and the employee had not been instructed to place her hand into the actual mold area.  
Id.
at 298.  The court concluded this was not sufficient evidence to meet even the "substantial certainty" test.  
Id.
 As in
Echols
, no one at Valdak had been previously injured by the machine.  Unlike the employee in
Echols
, Joshua was not ordered to work at the extractor, as he was not even assigned to work in that area and there were warnings on the machine.

[&P&26]  We conclude using a true intentional injury standard, the evidence is not sufficient to support a claim because there is no evidence Valdak had knowledge an injury was certain to occur from failure to repair the extractor.

[&P&27]  Both Zimmerman and Valdak raise other issues.  Because we conclude the only cause of action available is one for a true intentional injury and Zimmerman does not meet that standard, we need not address these other arguments.

[&P&28]  We, therefore, affirm the district court's summary judgment dismissing Joshua's claim.

[&P&29]
Mary Muehlen Maring

 Dale V. Sandstrom

 Gerald W. VandeWalle, C.J.

Zimmerman v. Valdak Corp.

Civil No. 970007

 NEUMANN, Justice, dissenting.

[&P&30]  
Because the majority opinion is inconsistent within itself, and relies on Professor Larson in an area of his treatise that is also inconsistent, I respectfully dissent.

[&P&31]  The majority opinion claims to have adopted a “true intentional tort” exception to North Dakota’s Workers Compensation Act.  However, in doing so, the majority contradicts itself.  First, it cites jurisdictions that have adopted a “true intentional tort” exception, stating “[t]hese courts allow an employee to pursue a civil cause of action only if the employer
intended
the act and
intended
an injury.”  (Emphasis added.)  The majority further points out that many courts in adopting the “true intentional tort” exception relied on
Arthur Larson, Larson’s Workers Compensation Law,
Vol. 6, &S& 68.13 (1997).  According to the majority, Professor Larson’s treatise suggests “an intentional tort exception should require nothing short of a ‘genuine intentional injury.’”  This definition is what the majority claims “reflects the underlying purpose of the exclusivity of workers’ compensation in North Dakota and conforms to that compensation policy.”

[&P&32]  The majority then defines “true intentional injury” as: “An employer is deemed to have intended to injure if the employer had knowledge an injury was certain to occur and willfully disregarded that knowledge.”  Here lies the inconsistency.  The

majority claims to have adopted a “true intentional tort” exception, and then defines a true intentional tort as something that is in fact a strict version of the “substantial certainty” test the majority claims to reject.

[&P&33]  While I agree we should adopt an intentional tort exception that would enable an employee to recover when the employer had knowledge an injury was certain (or substantially certain) to occur and willfully disregarded that knowledge, such a standard is not a “true intentional tort” test.  A “true intentional tort” test requires the employer to have intended the consequences.  
Schlenk
, 268 NW2d at 471.
(footnote: 8)
[&P&34]  In footnote 7, the majority, in an attempt to support its newly adopted definition of “true intentional tort,” relies on
Beauchamp
, an opinion that rejects the “true intentional tort” theory of Larson, and adopts a “substantial certainty” test.
Beauchamp
, 398 NW2d 893.  The
Beauchamp
case did discuss Arthur Larson’s Treatise and its attempt to include the fact of the
Film Recovery
case within its definition of a “true intentional tort.”  
Id.
at 892-93.  The
Beauchamp
case discussed
Film Recovery
:  “The facts in this case are a good example of the type of employer conduct that would seem to meet the substantial certainty as well as a substantial likelihood of harm standard.  It is questionable, however, whether even this outrageous conduct would constitute a ‘true intentional tort.’”  
Id.
, at 893.  I agree.

[&P&35]  A second flaw in the majority opinion is that under the standard articulated there still remains a question of fact as to whether the accident was certain to occur; yet, the majority “finds” that Joshua has not alleged sufficient facts to state a claim.

[&P&36]  This case was appealed from summary judgment.  Summary judgment under Rule 56 NDRCivP, is a procedural device for promptly disposing of a controversy.  
Johansen v. Anderson
, 555 NW2d 588, 591 (ND 1996).  It is appropriate if there is
no
genuine issue of material fact, or if the law is such that resolution of the factual dispute will not alter the result.  
Id.
 To determine if a genuine issue of material fact exists, a court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn therefrom.  
Id.
 A court must then “view the evidence in the light most favorable to the party opposing the motion."  
Sternberger v. City of Williston
, 556 NW2d 288, 289 (ND 1996).

[&P&37]  I believe Joshua has alleged sufficient facts to withstand a motion for summary judgment under the standard articulated by the majority today, at least on the current state of the record presented to the trial court.  As the majority points out, Joshua supported his case by directing the court to the OSHA investigation, which determined Valdak’s actions were willful violations of safety provisions.

[&P&38]  The majority specifically notes: (1) Valdak’s management knew the interlock was inoperative and did not repair it because it would shut them down for about an hour and a half; (2) theor should not be used in its present condition because it was substantially certain to injure someone; (3) there was a warning on the extractor not to insert hands in the basket; (4) Valdak’s management warned employees that if they put their arm in the machine, they could lose it; and, (5) Valdak had no previous OSHA violations and no one had previously been injured using the machine.

[&P&39]  Somehow, the majority “finds” this is not enough to state a claim.  However, the warnings listed above invoke a comparison of fault between Joshua and Valdak. The lack of previous OSHA violations and no previous injuries weighs in favor of Valdak, but this is countered by the affidavit by Akerlind stating he warned Valdak about the certainty of an accident occurring.

[&P&40]   Construing all of the evidence in a light most favorable to Joshua, the non-moving party, I believe reasonable minds could differ as to whether Valdak knew Zimmerman’s injury was certain to follow from a failure to repair the extractor.  On the current state of the record, a question of fact exists regarding whether an intentional tort was committed.
(footnote: 9)  Such a question of fact, under the standard for Rule 56, precludes summary judgment.  I would reverse and remand for further proceedings consistent with the opinion.

[&P&41]
William A. Neumann

 Herbert L. Meschke

FOOTNOTES
1:    
 N.D.C.C. &S& 65-01-01 (1992)(amended 1995) states:

The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-

being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, all civil actions and civil claims for relief for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title.

   N.D.C.C. &S& 65-01-08 (1992) states:

Where a local or out-of-state employer has secured the payment of compensation to that employer’s employees by contributing premiums to the fund, the employee, and the parents of a minor employee, or the representatives or beneficiaries of either, have no claim for relief against such contributing employer or against any agent, servant, or other employee of such employer for damages for personal injuries, but shall look solely to the fund for compensation.

   N.D.C.C. &S& 65-04-28 (1992) states:

Employers who comply with the provisions of this chapter shall not be liable to respond in damages at common law or by statute for injury to or death of any employee, wherever occurring, during the period covered by the premiums paid into the fund.

   N.D.C.C. &S& 65-05-06 (1992) states:

The payment of compensation or other benefits by the bureau to an injured employee, or to the injured employee’s dependents in case death has ensued, are in lieu of any and all claims for relief whatsoever against the employer of the injured or deceased employee.

2:    
 
See

Pleasant v. Johnson
, 325 S.E.2d 244, 247 (N.C. 1985) (acknowledging an intentional tort exception when an employer engages in an intentional tort);
Blankenship v. Cincinnati Milacron Chemicals, Inc.
, 433 N.E.2d 572, 576 (Ohio 1982) (allowing an employee to sue an employer for an intentional tort);  
Beauchamp v. Dow Chemical Co.
, 398 N.W.2d 882, 892-93 (Mich. 1986) (creating an intentional tort exception using the substantial certainty test);
Boek v. Wong Hing
, 231 N.W. 233, 234 (Minn. 1930) (holding an employer who intentionally and maliciously assaulted an employee could be sued at common law despite the availability of workers’ compensation);
Sitzman v. Schumaker
, 718 P.2d 657, 659 (Mont. 1986) (allowing an injured employee to sue his employer in a court of law for intentionally hitting him over the head with a pipe);
Baker v. Westinghouse Elec. Corp.
, 637 N.E.2d 1271, 1272 (Ind. 1994) (holding the workers’ compensation exclusive remedy provision does not bar certain intentional tort actions);
Heskett v. Fisher Laundry & Cleaners Co.
, 230 S.W.2d 28, 32 (Ark. 1950) (allowing an employee to seek full damages in a common-law action for an employer’s willful assault);
Mingachos v. CBS, Inc.
, 491 A.2d 368, 378 (Conn. 1985) (allowing an employee to sue his employer in a court of law for an intentional injury);
Kittell v. Vermont Weatherboard, Inc.
, 417 A.2d 926, 927 (Vt. 1980)(per curiam)(holding an employer who specifically intends to injure his employee is not covered under the Workers’ Compensation Act).

3:    
 Following Legislative amendments to Chapter 65-1, the new section referring to this definition can be found at &S& 65-01-

02(11)(b), effective August 1, 1997.

4:    
 The 1977 amendment to N.D.C.C. &S& 65-01-02(8) changed the definition of injury to “an injury
by accident
arising out of and in the course of employment . . .” [Emphasis added.]

5:    
 
See

Mayles v. Shoney’s, Inc.
, 405 S.E.2d 15, 21-23 (W.Va. 1990);
Fisher
, 498 So.2d at 883;
Woodson
, 407 S.E.2d at 228;
Jones v. VIP Dev. Co.
, 472 N.E.2d 1046, 1051 (Ohio 1984);
Brady v. Safety-Kleen Corp.
, 576 N.E.2d 722, 728-30 (Ohio 1991);
Beauchamp
, 398 N.W.2d at 893;
Travis
, 551 N.W.2d at 144-45;
VerBouwens v. Hamm Wood Products
, 334 N.W.2d 874, 876 (S.D. 1983);
Reed Tool Co. v. Copelin
, 689 S.W.2d 404, 407 (Tex. 1985);
Millison v. E.I. du Pont de Nemours & Co.
, 501 A.2d 505, 514 (N.J. 1985);
Mayer v. Valentine Sugars, Inc.
, 444 So.2d 618, 621 (La. 1984).

6:    
 
See

Kearney v. Denker
, 760 P.2d 1171 (Idaho 1988);
Bercaw v. Domino’s Pizza, Inc.
, 630 N.E.2d 166 (Ill. App. Ct. 1994);
Johnson Controls World Serv., Inc. v. Barnes
, 847 P.2d 761 (N.M. Ct. App. 1993);
Barber v. Pittsburgh Corning Corp.
, 555 A.2d 766 (Pa. 1989);
Peay v. U.S. Silica Co.
, 437 S.E.2d 64 (S.C. 1993);
Lantz v. National Semiconductor Corp.
, 775 P.2d 937 (Utah Ct. App. 1989);
Grillo v. National Bank of Washington
, 540 A.2d 743 (D.C. 1987).

7:    
 We provide this clarification, because we recognize, as did the Michigan court in
Beauchamp
, that the “intentional tort standards governing liability for punches in the nose are not readily transferred to toxic torts.”  
Beauchamp
, 398 N.W.2d at 893 n.69.  Larson discusses the
People v. Film Recovery Systems
case in his treatise discussion of the Michigan Supreme Court’s decision in
Beauchamp
.
 
Arthur Larson, Larson’s Workers’ Compensation Law
, Vol. 6, &S& 68.15(e).

 

 
People v. Film Recovery Systems
did not involve the meaning of “intentional injury” in a compensation setting.  
People v. O’Neil
, 550 N.E.2d 1090 (Ill. 1990).  Nevertheless, Larson suggests “a court could well say that this [employer’s actions] amounted to intending the injury.”  Larson reaches this conclusion based on the following recitation of the facts in
People v. Film Recovery Systems
:

The employer was in the business of recovering silver from film negatives.  The negatives were placed in vats of cyanide, from which cyanide gas would bubble up in an inadequately ventilated work place.  The employer knew all about the danger.  Because the labels on the chemicals contained adequate warnings, the employer hired only employees who could not speak or read English.  The workers complained daily about the fumes.  In 1981 an inspector warned that the operation had outgrown the plant.  The employer’s response was to triple the size of the operation, but move the executive offices.  Eventually one worker died and several were seriously injured as the result of cyanide poisoning.

6 Larson,
supra
, &S& 68.15(e), at 13-104 to 13-105.  Larson suggests that this conduct would constitute a true intentional tort stating:

The fumes, . . ., were continuously operative, and the employer knew it. . . . [t]he exposure to fumes
did
in fact occur.  The only possible “unknown” might have been the effect of inhaling the fumes, but this unknown was removed by the plain warning on the package.  The hiring of only workers who could not read warning labels confirms that the employer wanted those employees to continue to inhale these and suffer these known consequences.  
A court could well say that this amounted to intending the injury
. [Emphasis added.]

Id.
at 13-105 to 13-106.

8:    
 The court in
Schlenk
discussed the adoption of an exception “where the circumstances involve an actual intent to injure, such as in the case of an intentional assault and battery, or where the negligence is so gross as to be equivalent to an actual intent to injure.”  
Id.
 

9:    
See, e.g.

Woodson
, 407 SE2d at 231, which held a material issue of fact existed as to whether the employer knew the trenching operation at issue was substantially certain to cause serious injury.