2016 ND 138

**Penny BARTHOLOMAY, individually for herself and the heirs at law of Jon D. Bartholomay, Deceased, Plaintiff and Appellant**

v.

**PLAINS GRAIN & AGRONOMY, LLC, Defendant and Appellee.**

No. 20160030.

Supreme Court of North Dakota.

June 30, 2016.

Craig E. Johnson (argued) and Jared J. Hines (appeared), Fargo, N.D., for plaintiff and appellant.

Barton J. Cahill, Moorhead, MN, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Penny Bartholomay, individually for herself and the heirs of her deceased husband, Jon Bartholomay, appeals from a judgment dismissing her wrongful death action against Jon Bartholomay's former employer, Plains Grain & Agronomy, LLC. We affirm, because the facts alleged do not provide a genuine issue of material fact to avoid the exclusive remedy provisions of the Workforce Safety and Insurance Act.

I

[¶ 2] On January 18, 2013, Jon Bartholomay was loading grain into railcars at the Sheldon Grain Elevator as an employee of Plains, which was an insured employer under the Workforce Safety and Insurance Act, N.D.C.C. tit. 65. Jon Bartholomay fell from the top of a railcar he was loading and suffered serious injuries. Plains had no safety equipment in place to protect against falls, but intended to install a fall protection system. Jon Bartholomay never regained consciousness and died as a result of his injuries on February 15, 2013.

[¶ 3] Penny Bartholomay sued Plains for wrongful death damages alleging it intentionally exposed Jon Bartholomay to unsafe working conditions. Plains answered and claimed the lawsuit was barred by the exclusive remedy provisions of the Act. Penny Bartholomay responded that her lawsuit could proceed because, under the sole exception to employer immunity from civil liability under the Act, Jon Bartholomay's injuries were caused by Plains' "intentional act done with the conscious purpose of inflicting the injury." N.D.C.C. § 65-01-01.1. The district court granted summary judgment dismissing the lawsuit because, as a matter of law, Plains' alleged conduct did not rise to the level of an intentional act done with the conscious purpose of inflicting the injury.

II

[¶ 4] Penny Bartholomay argues the district court erred in dismissing her action because she presented evidence demonstrating Plains committed an intentional act with the conscious purpose of causing Jon Bartholomay's accident, injuries and eventual death.

[¶ 5] This Court's standard for reviewing a summary judgment is well established:

"Summary judgment is a procedural device for the prompt resolution of a con-

troversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Fleck v. Missouri River Royalty Corp.*, 2015 ND 287, ¶ 6, 872 N.W.2d 329 (quoting *Johnson v. Shield*, 2015 ND 200, ¶ 6, 868 N.W.2d 368).

[¶ 6] "Generally, when an employer complies with the workers compensation statutes, the employee's exclusive remedy against the employer is limited to recovery under the workers compensation statutes." *Barsness v. General Diesel & Equip. Co., Inc.*, 422 N.W.2d 819, 822 (N.D.1988); *see also* N.D.C.C. §§ 65–01–01, 65–01–08, 65–04–28, and 65–05–06. "Under the workers' compensation act, an employee generally gives up the right to sue the employer in exchange for sure and certain benefits for all workplace injuries, regardless of fault." *Trinity Hosps. v. Mattson*, 2006 ND 231, ¶ 11, 723 N.W.2d 684. Section 65–01–01.1, N.D.C.C., pro-

vides that "[t]he sole exception to an employer's immunity from civil liability under this title ... is an action for an injury to an employee caused by an employer's intentional act done with the conscious purpose of inflicting the injury." The statute was enacted in 1999, *see* 1999 N.D. Sess. Laws ch. 549, § 1, after the decision in *Zimmerman by Zimmerman v. Valdak Corp.*, 1997 ND 203, 570 N.W.2d 204.

[¶ 7] In *Zimmerman*, this Court held there is a public policy exception to the exclusive remedy provisions of the Act and the Act "does not preclude recovery for true intentional injuries and an employee can pursue a civil cause of action against his employer for a true intentional injury. An employer is deemed to have intended to injure if the employer had knowledge an injury was certain to occur and willfully disregarded that knowledge." 1997 ND 203, ¶ 21, 570 N.W.2d 204 (footnote omitted). *Zimmerman* involved a car wash employee whose right arm was torn off while using an industrial centrifuge extractor that had a safety interlock system which had been inoperative for months. *Id.* at ¶¶ 2, 3. The employer knew the interlock was inoperative but failed to repair it because the car wash would have to be shut down for an hour and a half. *Id.* at ¶ 22. This Court noted that some jurisdictions use the "substantial certainty test" for the intentional tort exception to workers compensation exclusive remedy provisions, under which the employer has committed an intentional tort "if the employer intended the act that caused the injury or knew the injury was substantially certain to occur from the act." *Id.* at ¶ 19. This Court also noted other jurisdictions use the "true intentional torts" test which allows "an employee to pursue a civil cause of action only if the employer intended the act and intended an injury." *Id.* at ¶ 20.

[¶ 8] The *Zimmerman* majority adopted the "true intentional torts" exception and affirmed summary judgment dismissal of the action:

"Applying the intentional injury test, we believe Joshua has not alleged sufficient facts to state a claim under the standard. In support of his case, Joshua directs the court to an investigation performed by the Occupational Safety and Health Commission which determined Valdak's actions were willful violations of safety provisions. In the record, the Commission's decision specifically notes that Valdak's management knew the interlock was inoperative, but failed to repair it. Valdak's manager, Joseph Strang, testified before the Commission that he did not have it repaired because it would have shut down the machine and the car wash for approximately an hour and a half. According to an affidavit of Steven Akerlind, an owner of Dakota Laundry Equipment, Akerlind had told Strang the extractor should not be used in its present condition because it was substantially certain to injure someone.

"However, at the bottom of the lid of the extractor is a warning: 'Never insert hands in basket if it is spinning even slightly.' The record further reveals management had even warned employees that if they put their arm in the machine, they could lose it. In addition, Valdak had no previous OSHA violations, and no one had been injured previously using the machine."

1997 ND 203, ¶¶ 22–23, 570 N.W.2d 204. This Court concluded, "using a true intentional injury standard, the evidence is not sufficient to support a claim because there is no evidence Valdak had knowledge an injury was certain to occur from failure to repair the extractor." *Id.* at ¶ 26.

[¶ 9] The dissent in *Zimmerman* claimed that the majority created an "inconsistency" by adopting a "true intentional tort" exception but defining it as a "strict version" of the "substantial certainty" test which does not require the employer to have intended the consequences. 1997 ND 203, ¶¶ 31–33, 570 N.W.2d 204 (Neumann, J., dissenting). The dissenting justices would have reversed and remanded because "reasonable minds could differ as to whether Valdak knew Zimmerman's injury was certain to follow from a failure to repair the extractor," and therefore "a question of fact exists regarding whether an intentional tort was committed." *Id.* at ¶ 40 (footnote omitted). Section 65–01–01.1, N.D.C.C., was subsequently enacted to avoid the "ambiguous and contradictory language of the Supreme Court in the *Zimmerman* decision ... by clearly defining the limited circumstances under which a suit may be brought against an employer." Hearing on H.B. 1331 Before the House Industry, Business, and Labor Committee, 56th Legis. Sess. (Jan. 19, 1999) (written testimony of David Thiele, Senior Litigation Counsel for North Dakota Workers Compensation Bureau).

[¶ 10] Any inconsistency in the *Zimmerman* decision was clarified by the Legislature's enactment of N.D.C.C. § 65–01–01.1 which requires the "employer's intentional act [be] done *with the conscious purpose of inflicting the injury.*" (emphasis added). As explained in 9 *Larson's Workers' Compensation Law* § 103.03, pp. 103-6–103-8 (2014):

"Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, de-

liberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury.

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, fostering a 'culture' of alcohol use at off-premises, after-hours company events, wilfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character."

(footnotes omitted). "If [the] decisions [applying the actual intent or true intentional torts test] seem rather strict, one must remind oneself that what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of the intentional versus the accidental quality of the precise event producing injury." *Id.* at pp. 103–8.

[¶ 11] Penny Bartholomay argues this Court should construe the phrase "conscious purpose" as being synonymous with the meaning of "intent" as understood in general tort and criminal law. *See* Restatement (Second) of Torts § 8A, comment b (1965) ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."); N.D.C.C. § 12.1–02–02(1)(a) ("For the purposes of this title, a person engages in conduct ... '[i]ntentionally' if, when he engages in the conduct, it is his purpose to do so.") But "[t]his Court 'interpret[s] statutes to give meaning and effect to every word, phrase, and sentence, and do[es] not adopt a construction which would render part of the statute mere surplusage.' " *Sorenson v. Felton,* 2011 ND 33, ¶ 15, 793 N.W.2d 799 (quoting *State v. Laib,* 2002 ND 95, ¶ 13, 644 N.W.2d 878). Penny Bartholomay's construction would eliminate the phrase "conscious purpose" from N.D.C.C. § 65–01–01.1 and revive the "substantial certainty" test discussed in *Zimmerman,* which the Legislature obviously rejected by using the "conscious purpose" language. Section 65–01–01.1, N.D.C.C., requires both that the employer engage in an "intentional act" and that the employer have a "conscious purpose of inflicting the injury."

[¶ 12] Viewed in the light most favorable to Penny Bartholomay the evidence shows Plains employed Jon Bartholomay to work on top of railcars loading grain and the grain elevator in Sheldon was the only elevator managed by Plains that did not have fall protection for its employees. Plains intended to install a fall protection system at its Sheldon facility in 2012, but the project was delayed even though 570 railcars were loaded there in the year before Jon Bartholomay's death. Installation of the fall protection system was delayed to allow for construction of a "track scale project." Plains regularly received safety program documents from the Grain Dealers Association. One of them was the "Grain Dealers Association Safety and Health Program, Railcar Loading Guidelines." Following an inspection by a safety specialist with the Association, the specialist informed Plains there was no fall protection in place at the Sheldon facility. After Jon Bartholomay's accident the Occupational Safety and Health Administration ("OSHA") issued Plains two citations for "serious" violations, including the fail-

ure to have a fall protection system at the Sheldon facility. OSHA's lead investigator of the accident said the violations were classified as "willful" because Plains "knew it was a hazard and provided no interim protection."

[¶ 13] Penny Bartholomay argues she has alleged facts sufficient to withstand the summary judgment motion because:

"Plains Grain knew that loading and unloading railcars on top of a grain elevator was dangerous and that protection needed to be implemented to prevent an injury which was certain to occur if fall protection was not put in place. Despite being specifically notified and warned numerous times regarding the dangers of continuing its operation without fall protection, Plains Grain decided to forego installation of fall protection systems and actually increased its work load at its Sheldon facility."

[¶ 14] We agree with the district court's analysis of the evidence presented by Penny Bartholomay:

"In order to maintain her wrongful death action, [Penny Bartholomay] must demonstrate that [Plains] acted intentionally and with a conscious purpose to cause [Jon] Bartholomay's injury in order to remove [Plains'] immunity from civil liability as an employer. The undisputed facts indicate that while there very well may be an issue of whether [Plains] acted intentionally, [Penny Bartholomay] has not established evidence of any facts that demonstrate [Plains] acted with a conscious purpose to cause [Jon] Bartholomay's accident, injuries, and eventual death. As a result of the almost impossibly strict standard N.D. Cent.Code § 65–01–01.1 places upon employees seeking civil redress from their workplace injuries, even if the Court were to liberally construe [Penny Bartholomay's] cause of action in the Com-

plaint, [Plains] has established that it is entitled to judgment as a matter of law."

[¶ 15] Penny Bartholomay argues it is against public policy to grant immunity from suit to employers for their knowing and intentional violation of state and federal safety standards and regulations. But this Court considered public policy in judicially recognizing the "intentional tort exception" in *Zimmerman*, 1997 ND 203, ¶¶ 14–21, 570 N.W.2d 204, and the Legislature has codified that exception in its own explicit terms. The Legislature is much better suited than courts to identify or set the public policy in this state. *See, e.g., Rodenburg v. Fargo–Moorhead Young Men's Christian Ass'n*, 2001 ND 139, ¶ 29, 632 N.W.2d 407. The Legislature has spoken and set the public policy on the limits of a covered employer's liability.

[¶ 16] Because sufficient facts have not been alleged to raise a genuine issue of material fact that Plains engaged in an intentional act with the conscious purpose of inflicting Jon Bartholomay's injuries, the district court did not err in dismissing the action as a matter of law.

III

[¶ 17] We have considered the other arguments raised and find them to be unnecessary to our decision or without merit. The summary judgment is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.