2001 ND 80

Carolina A. PRAUS, individually, and on behalf of the heirs at law of Christian PRAUS, deceased; Carolina A. Praus, as trustee for the North Dakota Workers Compensation Bureau, Plaintiffs and Appellants,

v.

Brian MACK, Keith Brown Trucking, Inc., Defendants and Appellees,

and

James Cape and Sons, Inc., Defendant, Third–Party Plaintiff and Appellee,

v.

Edling Electric Co., Third–Party Defendant and Appellee.

No. 20000106.

Supreme Court of North Dakota.

May 1, 2001.

H. Morrison Kershner, Pemberton, Sorlie, Rufer and Kershner, PLLP, Fergus Falls, for plaintiffs and appellants.

Kraig A. Wilson (argued) and Patrick R. Morley (on brief), Grand Forks, for defendant and appellee Brian Mack.

Howard D. Swanson, Letnes, Marshall & Swanson, Ltd., Grand Forks, for defendant and appellee Keith Brown Trucking, Inc.

Stephen W. Plambeck (argued) and Joel M. Fremstad (on brief), Nilles, Hansen & Davies, Ltd., Fargo, for defendant, third-party plaintiff and appellee.

Gordon W. Myerchin (argued) and Darin B. Barker (on brief), Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, for third-party defendant and appellee.

KAPSNER, Justice.

[¶ 1] Carolina A. Praus, individually and on behalf of the heirs at law of Christian Praus and as trustee for the Workers Compensation Bureau, appealed from a judgment dismissing her wrongful death action against Brian Mack, Keith Brown Trucking, Inc., and James Cape and Sons, Inc., and dismissing her motion for a new trial. We conclude the trial court did not abuse its discretion in refusing to sever the indemnity claims from the negligence trial; did not err in granting additional peremp-

tory challenges to the parties; did not err in limiting the testimony of expert witnesses concerning violation of safety regulations; did not commit reversible error in instructing the jury; and did not abuse its discretion in denying Praus' motion for a new trial based on allegations of juror misconduct. We affirm.

I

[¶ 2] This wrongful death action arose out of an accident at a highway construction project on September 19, 1994, in Grand Forks. Christian Praus was killed when a truck filled with wet cement and driven by Brian Mack backed over him. At the time of the accident, Christian was drilling holes in the roadbed of the construction project preparing for the installation of electric signaling facilities.

[¶ 3] Christian was employed by Edling Electric Co. ("Edling"), which was an electrical subcontractor of James Cape and Sons, Inc. ("Cape"), the prime contractor for the project. Mack worked under a subcontract with Keith Brown Trucking, Inc. ("Brown"), to provide a truck and to haul wet batch cement. Brown had a subcontract with Cape to provide trucks and to haul cement.

[¶ 4] Carolina Praus, individually and on behalf of the heirs and the Workers Compensation Bureau, brought this wrongful death action against Mack, Brown and Cape in March 1996. Praus alleged Mack directly caused Christian's death because he was negligent in failing to keep a reasonable lookout for workers and in failing to have a functional reverse signal alarm on the truck to warn individuals when the truck was backing up. Praus alleged Brown directly caused the death because it was vicariously responsible for Mack's negligence, and Brown was itself negligent in failing to properly evaluate and monitor the construction site to make sure workers were not exposed to the hazard of being struck by heavy equipment and in failing to make sure trucks leased to it were equipped with functional reverse signal alarms. Praus alleged Cape directly caused the death because it was likewise negligent in failing to properly evaluate and monitor the construction site. Brown cross-claimed against Mack for contribution or indemnity for any damages Praus may recover from Brown. Cape cross-claimed against Brown and brought a third-party action against Edling, claiming entitlement to indemnity for any damages awarded to Praus based on the language of its subcontract agreements.

[¶ 5] The trial court denied Praus' motion to sever Cape's indemnity claims against Edling and Brown from the negligence action. Following a two-week trial, the jury found Christian 60 percent at fault and a proximate cause of his own death, Cape 25 percent at fault and a proximate cause of the death, and Mack 15 percent at fault and a proximate cause of the death. The jury found Edling was at fault, but assigned no percentage of negligence because the jury found Edling did not proximately cause the death. The jury found Brown and "Others" listed on the verdict form not to be at fault. The trial court denied Praus' motion for a new trial and dismissed Praus' claims with prejudice. Praus appealed.

II

[¶ 6] We review a trial court's denial of a N.D.R.Civ.P. 59 motion for a new trial under the abuse of discretion standard. *Schneider v. Schaaf*, 1999 ND 235, ¶ 12, 603 N.W.2d 869. A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *In*

*re S.J.F.*, 2000 ND 158, ¶ 22, 615 N.W.2d 533.

## A

[¶ 7] Praus contends the trial court erred in refusing to sever the indemnity claims from the negligence trial.

[¶ 8] A trial court has broad discretion over the conduct of a trial, but it must exercise this discretion in a manner that best comports with substantial justice. *Slaubaugh v. Slaubaugh*, 466 N.W.2d 573, 580 (N.D.1991). A trial court's rulings on a motion for severance under N.D.R.Civ.P. 21, or a motion for a separate trial under N.D.R.Civ.P. 42(b), will not be overturned on appeal unless the complaining party demonstrates the court abused its discretion. *Witthauer v. Burkhart Roentgen, Inc.*, 467 N.W.2d 439, 442 (N.D.1991); *Fed. Land Bank of Saint Paul v. Wallace*, 366 N.W.2d 444, 448 (N.D.1985); *Bismarck Pub. Sch. v. Ritterbush Assoc.*, 313 N.W.2d 712, 715 (N.D.1981); *Schell v. Schumacher*, 298 N.W.2d 474, 477 (N.D.1980); *Brauer v. James J. Igoe & Sons Const., Inc.*, 186 N.W.2d 459, 474–75 (N.D.1971).

[¶ 9] A chronology of procedural events is helpful for understanding this issue. Early in the litigation, Brown moved for summary judgment on the basis that it was not responsible for the negligent acts of Mack, its independent contractor. In December 1997, the trial court agreed with Brown and dismissed Praus' negligence claims against it, "subject to any right Cape may have to indemnification." The court ruled Praus had presented no evidence to show Brown had any control over Mack, or supervised or inspected any part of Mack's work. The court found Praus' claims against Brown were "meritless" and awarded Brown attorney fees and costs incurred in defense of the claim. The court also noted "although Cape has not made a motion for summary judgment,

based upon the record now before this Court, it appears that Cape may also be entitled to summary judgment for the same reasons set forth herein."

[¶ 10] Cape then moved for summary judgment in April 1998 on the same grounds advanced by Brown. Praus, who had obtained different counsel, opposed the motion, arguing because the project was a federal highway project, Cape, as the general contractor, was mandated by federal law to retain control over construction operations. According to Praus, under federal law, the prime contractor and any subcontractors were deemed to have joint responsibility. Praus also argued the record showed Cape exercised actual control over the method and manner of the work at the construction site. Praus had not advanced these reasons in response to Brown's motion for summary judgment. The court adopted Praus' arguments and denied the summary judgment motion, concluding the "amount of control, and therefore the amount of negligence, if any, is a question for the jury to decide."

[¶ 11] Brown then settled with Praus, and Praus' action against Brown was dismissed with prejudice by agreement between those parties. Praus moved for severance of the indemnity claims brought by Cape against Edling and Brown from the negligence claims against Mack and Cape "to avoid prejudice and jury confusion." In January 1999, the court found judicial economy and the comparative fault law required the claims to be tried in one action and Praus had failed to show undue prejudice would occur. The court ruled all claims in the case, excluding Cape's contract claims against Brown, would be tried in one action and the court would provide the jury with adequate instructions to avoid undue prejudice. In February 1999, Brown's cross-claim against Mack was severed by agreement of those parties to be

tried separately after the wrongful death action.

[¶ 12] In March 1999, the parties appeared before the court for a settlement conference where the issue of joint liability between Brown, Cape and Edling under federal law was discussed. In May 1999, the court ruled N.D.C.C. § 32–03.2–02, providing for several liability, was not preempted by the federal regulations governing federal highway projects, and liability of the defendants under the circumstances of this case would be several rather than joint. The court also denied Edling's motion for summary judgment because it was made too late and would delay the trial. The court did not rule on the validity of the contractual indemnity claims.

[¶ 13] Mack, Brown, Cape and Edling participated during the trial. The trial court instructed the jury:

> Defendant Cape also cross-claimed against Defendant Keith Brown Trucking (Brown) and joined Edling Electric Company (Praus' employer) alleging that if Cape is found by the jury to be negligent, then Brown and Edling must indemnify Cape for the total of all damages assessed against Cape. Both Brown and Edling deny any negligence and also deny that they must indemnify Cape if damages are awarded. However, the issue of indemnity is a matter of law and shall be decided by the Court instead of the Jury.

[¶ 14] Because the jury returned a verdict finding Praus 60 percent at fault, the trial court dismissed the action and did not rule on the contractual indemnity issues. The court denied Praus' motion for new trial on the severance issue, ruling "[i]n this case all of the claims and parties arise from the same occurrence. It would be a waste of judicial resources to sever the claims when one jury is capable of making a factual determination of fault."

[¶ 15] Praus argues the trial court abused its discretion in denying the motion to sever the indemnity claims from the negligence trial because the indemnity claims lacked merit, prejudiced her, and precluded her from receiving a fair trial.

[¶ 16] The Rules of Civil Procedure should be "construed and administered to secure the just, speedy, and inexpensive determination of every action." N.D.R.Civ.P. 1. Consolidating litigation facilitates the efficient and expeditious resolution of disputes. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 600 (5th Cir.1981). The Rules liberally provide for joinder of claims, parties and actions. *See* N.D.R.Civ.P. 13, 14, 19, 20(a), 21, 22, 24, and 42(a). Rule 42(b), N.D.R.Civ.P., which allows for separate trials, "is intended to counterbalance [the other rules] by permitting a separate trial of issues which cannot well be tried together, or which can be conveniently and quickly determined before trial of the other issues...." *Giese v. Engelhardt*, 175 N.W.2d 578, 583 (N.D. 1970).

[¶ 17] There is "broad judicial discretion in determining whether or not consolidation is proper and courts exercising that discretion will seldom be overruled." 8 *Moore's Federal Practice* § 42.10[2][a], at p. 42–13 (Matthew Bender 3d ed.) (footnote omitted) ("*Moore's*").

> The provision for separate trials in Rule 42(b) is intended to further the parties' convenience, avoid delay and prejudice, and serve the ends of justice. It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties. The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course.

Thus, Rule 42(b) should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule.

9 Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 2388, at pp. 473–74 (1995) (footnotes omitted) (*"Wright & Miller"*). In 8 *Moore's*, at § 42.10[4][a] p. 42–17, the authors state:

Courts have been most likely to approve consolidation when they find that it serves the interests of justice. Even though it is widely agreed that considerations of judicial economy favor consolidation, "the benefits of efficiency can never be purchased at the cost of fairness." Courts have employed a balancing test to determine whether consolidation serves the interests of justice. In weighing the interests of convenience and economy against an ultimate goal of fairness and impartiality at trial, as well as individual justice, courts have found fairness must be paramount. In balancing the interests to determine whether or not to consolidate, the Second Circuit considered the following:

whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

(quoting *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 350 (2d Cir.1993); footnotes omitted).

■ [¶ 18] There are no limitations on the kinds of actions that may be consolidated, *see* 9 *Wright & Miller*, at § 2384,

and it is not unusual for courts to consolidate indemnity claims with the underlying action. The reasons usually given as justification for consolidation of these actions are judicial economy, the risk of inconsistent results from two juries when the transactions and operative facts are closely intertwined, and the undue delay and expense caused by separate trials. *See, e.g., Hightower & Co. v. U.S. Fidelity & Guar.*, 527 So.2d 698, 703 (Ala.1988); *Nanasi v. General Motors Corporation*, 56 Mich.App. 652, 224 N.W.2d 914, 919 (1974); *Villatoro v. Talt*, 269 A.D.2d 390, 702 N.Y.S.2d 381, 383 (2000); *Rahman v. Miller*, 257 A.D.2d 654, 684 N.Y.S.2d 580, 581 (1999); *Power Test Petro. v. Northville Industries*, 114 A.D.2d 405, 494 N.Y.S.2d 129, 131 (1985); *Business Council of New York v. Cooney*, 102 A.D.2d 1001, 478 N.Y.S.2d 94, 96 (1984); *O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Super. 272, 423 A.2d 1251, 1261–62 (1980).

■ [¶ 19] Praus argues the trial court's ruling that liability would be several rather than joint extinguished Cape's contractual indemnity claims as a matter of law and therefore the court erred in consolidating the actions. The trial court's ruling on liability was made in the context of Praus' argument that 29 C.F.R. § 1926.16(a) supersedes North Dakota's adoption of several liability in N.D.C.C. § 32–03.2–02. Relying on *Pedraza v. Shell Oil Company*, 942 F.2d 48 (1st Cir.1991), the trial court rejected Praus' argument and held state law several liability was not preempted by federal law.

[¶ 20] Praus relies on *Target Stores v. Automated Maintenance Serv., Inc.*, 492 N.W.2d 899 (N.D.1992), for the proposition the indemnity claims were precluded because of statutory several liability. The trial court did not address this argument, presumably because it decided to reserve ruling on the legal questions involving in-

demnity until after trial of the negligence action. *Target Stores,* 492 N.W.2d at 900, held that, under N.D.C.C. ch. 32–03.2, "a sued tort-feasor cannot maintain a third-party claim for contribution against a tort-feasor not sued by the injured claimant." However, *Target Stores* did not involve contracts of indemnity, as in this case, and does not settle the issue Praus raises here. The trial court's ruling that state law several liability was not preempted by federal law did not preclude the possibility of indemnity liability under the subcontract agreements.

[¶ 21] A third-party summons and complaint are appropriate when a person not a party to the action is or *may be liable* to the third-party plaintiff for all or part of the plaintiff's claims against the third-party plaintiff. *See* N.D.R.Civ.P. 14(a); *Selland v. Selland,* 519 N.W.2d 21, 22 (N.D. 1994). Cape's subcontract with Brown provided:

26. COMPLIANCE WITH OSHA STANDARDS—The subcontractor warrants to JAMES CAPE & SONS COMPANY hereafter referred to as contractor that all machinery, accessories, parts and/or other goods and materials used by subcontractor on the above named project are designed, manufactured, and/or constructed, and are capable of being operated effectually, so as to comply (1) with the Occupational Safety and Health Act of 1970, as amended, and with the standards and rules issued thereunder ... and (3) with other federal, state, and local laws, ordinances, and regulations issued thereunder, with respect to occupational safety and health. Subcontractor agrees to indemnify and hold contractor harmless for, of and from any loss contractor may sustain by reason of subcontractor's failure to comply with said laws, rules, and regulations in connection with the design, manufac-

ture and/or construction of machinery, accessories, parts and/or other goods and materials used on the above named project. Subcontractor further agrees to indemnify and hold contractor harmless for, of, and from any loss contractor may sustain by reason of subcontractor's failure to comply with any other federal, state and local laws, ordinances, and regulations issued with respect to occupational safety and health and applying to the above named project.

[¶ 22] Cape's subcontract with Edling contained, in addition to the above provision, the following:

12. It is expressly understood and agreed that the SUBCONTRACTOR will indemnify and hold harmless the CONTRACTOR for all loss, damage, claim or injury from any act or omission of the SUBCONTRACTOR, their employees, or agents for any injuries or damages, real or personal, sustained by their employees or agents.

[¶ 23] Under these contract provisions, indemnification potentially involved considerations of fault attributable to Cape, Brown, Mack and Edling. Although the issue was rendered moot in light of the jury's verdict, Cape had a reasonable argument that the indemnification provisions could be applicable based on the potential fault of the parties. *See, e.g., Rupp v. American Crystal Sugar Co.,* 465 N.W.2d 614 (N.D.1991); *Bridston v. Dover Corp.,* 352 N.W.2d 194 (N.D.1984). *Compare Barsness v. General Diesel & Equipment Co., Inc.,* 422 N.W.2d 819 (N.D.1988); *Vanderhoof v. Gravel Products, Inc.,* 404 N.W.2d 485 (N.D.1987). Without a determination of fault being made among the parties, the trial court would not have been able to render a decision regarding the indemnification claims without conducting another trial. The court was not required to rule on the legal validity of the indemni-

ty claims before the indemnification issues were ripe for consideration.

■ [¶ 24] Although Brown was dismissed from Praus' lawsuit on summary judgment early in the proceedings, Brown took part in the trial and was listed in the verdict forms as if the dismissal had not occurred. Under the circumstances of this complex litigation, we see no prejudicial error. Prompted by the trial court's statements in the summary judgment dismissing Brown, Cape moved for summary judgment on the same grounds urged by Brown. Praus, through different counsel, successfully opposed the summary judgment motion by asserting theories that were not urged in defending against Brown's summary judgment motion. The summary judgment dismissing Brown was an interlocutory order, and absent a N.D.R.Civ.P. 54(b) certification, an interlocutory order is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. *See Thompson v. Goetz*, 455 N.W.2d 580, 585 (N.D.1990). The trial court's reasoning in the order denying Cape's motion for summary judgment obviously caused Brown concern that the court had changed its mind and Brown could be found liable in the negligence trial. Brown then settled with Praus, stipulated to severance of its cross-claim against Mack, and did not object to its inclusion on the special verdict form. The absence of an order formally vacating the interlocutory summary judgment dismissing Brown from the action, and Brown's participation in the negligence trial, did not unduly prejudice Praus.

[¶ 25] Praus alleges prejudice from having to contend with four sets of adverse counsel, instead of only two, if Brown and Edling had not been allowed to participate. Praus has not cited, nor have we found, any authority for the proposition that fac-

ing multiple counsel is per se prejudicial. Moreover, it was Cape's theory that, if it were found at fault, the indemnification obligation could be triggered if Edling or Brown were also found at fault, or if another's fault was imputable to them. Cape asserted, under the contracts, Praus' fault as an Edling employee was imputable to Edling, and Mack's fault was imputable to Brown. Thus, the factual issues in the trial of the indemnity actions, as well as the negligence action, centered on the allocation of fault and damages, and the trial court acted within the bounds of its discretion in having the jury consider the fault of all parties involved in the incident. The negligence action and indemnity claims arose from the same incident, and the evidence presented at the negligence trial would have been basically the same as the evidence presented at a delayed second trial of the indemnity claims. Inconsistent jury allocations of fault were a possibility, and the delay occasioned by separate trials likely could have spanned years if the parties appealed the judgment in the negligence trial.

[¶ 26] Although we might have handled the negligence and indemnity claims differently than did the trial court, we cannot say the court abused its discretion in consolidating those claims for trial. Praus has failed to establish she was unduly prejudiced by the trial court's refusal to sever the negligence action from the indemnity actions.

B

■ [¶ 27] Praus argues the trial court erred in granting additional peremptory challenges to Cape, Mack, Edling and Brown. The trial court in this case granted six peremptory challenges to Praus, four to Mack, three to Cape, two to Edling, and two to Brown.

[¶ 28] Under N.D.R.Civ.P. 47(b), if a side consists of more than one party, that side is entitled to a total of four peremptory challenges when a nine-person jury is to be empaneled. However, "[i]f parties on a side have essentially adverse or antagonistic interests the trial judge may grant the parties on that side additional peremptory challenges." *Id. See also Staiger v. Gaarder*, 258 N.W.2d 641, 645 (N.D.1977). The trial court has broad discretion in granting or denying additional peremptory challenges beyond the number mandated by the rule. *See State v. Purdy*, 491 N.W.2d 402, 408 (N.D.1992); *Staiger*, 258 N.W.2d at 645.

[¶ 29] Praus argues the defendants' interests were not essentially adverse or antagonistic in this case, and, relying on cases from other jurisdictions, Praus contends the trial court at least should have held a conference specifically addressing whether additional peremptories should be granted. This Court has not set forth specific procedural requirements for determining whether interests are essentially adverse or antagonistic. We decline to do so here because the trial judge, through the numerous pretrial motions and hearings conducted during the years preceding the trial, was well informed of the varying interests and positions of the parties.

[¶ 30] In *Staiger*, 258 N.W.2d at 645, this Court construed the predecessor statute to N.D.R.Civ.P. 47(b) and held that where the plaintiff had alleged separate acts of negligence against two defendants, the defendants filed separate pleadings and were represented by separate counsel, their interests were essentially adverse and antagonistic and the trial court did not abuse its discretion when it allowed the defendants four peremptory challenges each. We agree with the trial court's observations in the order denying the motion for new trial:

In this case, Plaintiffs alleged separate acts of negligence against Cape and Mack. Each Defendant was represented by separate counsel and each Defendant filed separate pleadings. Furthermore, each Defendant was essentially adverse or antagonistic to the other Defendants. Throughout the trial the Defendants were attempting to shift the blame onto each other. Defendant Brown was brought into the action by a cross-claim served by Defendant Cape, and Defendant Edling Electric was brought into the action by a third-party complaint served by Defendant Cape. These parties were adverse and antagonistic based on how they were brought into the action.

[¶ 31] Praus has not shown the trial court abused its discretion in granting the additional peremptory challenges, and has not shown any prejudice resulted from the additional challenges granted to the defendants. *See* N.D.R.Civ.P. 61.

C

[¶ 32] Praus argues the trial court erred in failing to allow her experts to testify that the defendants violated federal and state safety regulations.

[¶ 33] Praus called safety engineers to give expert testimony that Occupational Safety and Health Act ("OSHA") regulations and state safety regulations were violated by the defendants. The trial court did not allow the experts to testify about specific violations of OSHA and state safety regulations, but allowed them to testify about customs and practices in the industry.

[¶ 34] The admission of expert testimony is governed by N.D.R.Ev. 702, which envisions generous allowance of the use of expert witnesses who are shown to have some degree of expertise in the

relevant field. *Endresen v. Scheels Hardware & Sports Shop, Inc.*, 1997 ND 38, ¶ 10, 560 N.W.2d 225. Even under the broadest and most generous allowance of the use of expert witnesses, there is a point at which their testimony may be excluded. *Stein v. Ohlhauser*, 211 N.W.2d 737, 743 (N.D.1973). An expert will not be permitted to express an opinion if the facts and circumstances disclosed by the evidence are such that it may be assumed that the jury is capable of understanding them and arriving at its own conclusion. *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 163 (N.D.1985). Although expert testimony is admissible whenever specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, *Lovcik v. Ellingson*, 1997 ND 201, ¶ 15, 569 N.W.2d 697, whether expert testimony is useful falls within the trial court's sound discretion. *In re Lukens*, 1998 ND 224, ¶ 12, 587 N.W.2d 141. Expert testimony, like other evidence, even if probative, is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. N.D.R.Ev. 403; *First Trust Co. v. Scheels Hardware*, 429 N.W.2d 5, 12 (N.D.1988). The decision whether to allow expert testimony rests within the sound discretion of the trial court and will not be overturned on appeal unless the court has abused its discretion. *Cook v. Eggers*, 1999 ND 97, ¶ 12, 593 N.W.2d 781.

[¶ 35] In North Dakota, the violation of a statutory or regulatory duty is evidence of negligence and not negligence per se. *See Larson v. Kubisiak*, 1997 ND 22, ¶ 8, 558 N.W.2d 852; *Steuber v. Hastings Heating & Sheet Metal Co.*, 153 N.W.2d 804, 805 (N.D.1967). The trial court admitted the OSHA regulations into evidence for the jury to consider and instructed the jury "[t]he portions of the Federal and State Standards and Regulations I have read to you are now in evidence for you to consider in determining the standard of care a reasonable person would use in circumstances to which the regulations apply." *See, e.g., Albrecht v. Baltimore & Ohio Railroad Co.*, 808 F.2d 329, 332 (4th Cir.1987) (approving similar procedure). The trial court would not allow the experts to specifically testify whether there were violations of OSHA and state safety regulations because "this trial was not a Federal OSHA enforcement proceeding. Allowing an expert to testify that OSHA regulations were violated would have been prejudicial to Defendants Cape and Mack because the jury may have considered an OSHA violation negligence per se."The trial court also reasoned "the jury was likely capable of interpreting the OSHA regulations, ascertaining whether there was a violation, and considering that evidence in its negligence determination. Expert testimony identifying two of the defendants as OSHA violators would not have assisted the trier of fact, but would have clouded the issue of negligence."

[¶ 36] We have reviewed the cases relied on by Praus supporting the admission of the expert testimony and find those cases distinguishable on their particular facts. Assuming, for purposes of argument, evidence of OSHA violations is admissible to effect a standard of civil liability, *see Minichello v. U.S. Industries, Inc.*, 756 F.2d 26, 28 (6th Cir.1985), we cannot say the trial court abused its discretion in not allowing the experts to testify whether violations occurred. The trial court was not required to allow this negligence action to become even more complicated and protracted by focusing on possible OSHA violations. The court allowed the admission of evidence of custom and practice at trial

and the parties argued those issues before the jury. We conclude the trial court appropriately balanced the Rule 403 factors and did not err in allowing the jury to decide if the conduct of any of the parties conformed or failed to conform with applicable OSHA and state safety regulations.

### D

[¶ 37] Praus argues the trial court committed reversible error in its instructions to the jury.

■ [¶ 38] Jury instructions must fairly and adequately inform the jury of the applicable law. *Huber v. Oliver County*, 1999 ND 220, ¶ 10, 602 N.W.2d 710. Although a party is entitled to instructions which present that party's theory of the case, the trial court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of applicable law. *Olson v. Griggs County*, 491 N.W.2d 725, 729 (N.D.1992). On appeal, jury instructions must be viewed as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient. *Kreidt v. Burlington Northern Railroad*, 2000 ND 150, ¶ 6, 615 N.W.2d 153.

### 1

■ [¶ 39] Praus contends the trial court's failure to include an instruction concerning customs and practices evidence was prejudicial error. Praus requested the following instruction be given to the jury:

In this case, some evidence has been introduced that relates to standard custom or practice for performing various construction operations or undertakings. Evidence of general custom or practice is available for your consideration in determining whether or not the conduct of

any of the parties was, in any particular situation, that of a reasonably prudent person. Evidence of general custom or practice should not be considered by you as establishing a set standard on a basis of which the conduct in question is to be held negligent or not negligent.

[¶ 40] In *Kreidt*, 2000 ND 150, ¶ 7, 615 N.W.2d 153, the appellant argued the trial court erred in refusing to give a sudden emergency instruction. We said:

The sudden emergency doctrine is not so much a doctrine as an illustration of how negligence law is applied in a specific situation. *See Erickson v. Schwan*, 453 N.W.2d 765, 768 (N.D.1990) (noting the focus for determining tort liability has shifted from traditional, doctrinal labels to the singular, inclusive concept of fault). While the sudden emergency instruction may be given in appropriate cases, it is not indispensable. Thus, refusal to give a sudden emergency instruction is not by itself enough to constitute error.

*Kreidt*, 2000 ND 150, ¶ 9, 615 N.W.2d 153. We concluded the instructions given to the jury on "ordinary negligence" allowed the appellant to argue its theory of the case and adequately informed the jury of the law. *Id.* at ¶ 11.

■ [¶ 41] Likewise, "custom and usage operat[e] only as evidence to be considered by the jury, with all competent proof in the case, in determination of the ultimate issue of negligence." *Brauer*, 186 N.W.2d at 472. The trial court's definition of "ordinary negligence" for the jury in this case included the following:

Evidence of a standard of care required in any given situation may be prescribed by the laws of this state or the federal government. Evidence of such a standard is available for your consideration in determining whether or

not the conduct of any person was, in the particular situation, that of a reasonably prudent person. However, you may not assume that failure to follow a particular standard means someone is at fault or negligent. You may only consider such standards in connection with other evidence of negligence or fault.[1]

[¶ 42] The trial court allowed the introduction of evidence of custom and usage and the parties were allowed to argue their theories of the case to the jury. We conclude the requested instruction on custom and usage was not necessary, and the instructions given by the trial court adequately informed the jury of the law.

2

[23] [¶ 43] Praus contends the trial court committed reversible error by failing to instruct the jury about 29 C.F.R. § 1926.20, regarding accident prevention responsibilities, and 29 C.F.R. § 1926.21, regarding duties to instruct employees of unsafe conditions. The trial court instructed the jury regarding several other federal and state safety regulations, but gave no instructions on these regulations.

[24] [¶ 44] Even if Praus' requested instructions would have more fully informed the jury of regulatory duties, the error, if any, in failing to give the instructions was not reversible error. A trial court's failure to instruct the jury about the violation of a specific statute is not prejudicial error if the complaining party had the opportunity to argue the theory to the jury and the instructions given allowed for a finding of negligence if the jury believed the complaining party's evidence. *See Wolf v. Estate of Seright*, 1997 ND 240, ¶¶ 8–9, 573 N.W.2d 161. Here, Praus

had the opportunity to argue to the jury the alleged violations of the federal regulations and the instructions allowed for a finding of negligence if the jury believed Praus' evidence.

[¶ 45] Moreover, as the trial court explained:

The ... federal regulations which were excluded pertained to general accident prevention responsibilities, duties to instruct employees in the recognition and avoidance of unsafe conditions and the prohibition against off-highway trucks being operated in reverse gear without a distinguishable backup alarm. Of these regulations, some were duplicative and others inapplicable.

The jury was instructed as to each parties' responsibility for their own conduct, the duty of an employer and an employee, and the duty of a general contractor. The jury was also instructed as to the requirement of having an audible backup alarm.

[¶ 46] We conclude the trial court did not commit reversible error in refusing to instruct the jury on the additional federal regulations.

3

[25] [¶ 47] Praus argues the trial court erred in failing to instruct the jury that a corporation can be liable for the acts of its agents. Praus argues this instruction was necessary because the conduct of Cape employees in the course of their employment was at issue.

[¶ 48] Although the trial court did not specifically instruct the jury that a corporation can be liable for the acts of its

---

1. Praus also challenged this instruction on appeal. During oral argument, Praus' counsel conceded there was no objection to this instruction. Consequently, Praus failed to preserve any alleged error concerning this instruction for appellate review and the instruction became the law of the case. *See Deichert v. Fitch*, 424 N.W.2d 903, 905 (N.D. 1988).

agents, the court did instruct the jury "[e]veryone is responsible not only for injury caused by his willful acts but also for injury to another person caused by ordinary negligence in the management of his property or person." The court also instructed the jury "[a] general contractor has a duty to exercise reasonable care in maintaining those portions of the project over which it has retained control in a reasonably safe condition, and has a duty to warn others of any danger which is not obvious and which is known to or discoverable by the general contractor in the exercise of ordinary care." The jury was further instructed "[a]n employer has a duty to provide an employee with a reasonably safe place to work and reasonably safe equipment for the job to be performed. The employer has a duty to adopt work practices which make the environment safe; to provide appropriate training and supervision for the work to be done; and to ensure that the work progresses in a reasonably safe manner."

[¶ 49]   The legal concept that a corporation may be liable for the acts of its agents was not disputed at trial, and counsel argued the corporations could not be liable unless their employees were found at fault. Two Cape employees testified they were employed by Cape when the accident occurred.   Counsel also explained to the jury the difference between an independent contractor and an employee. From the instructions given, the evidence, and argument of counsel, the jury knew the parties were responsible for the negligent acts or omissions of their own employees. The jury's knowledge is demonstrated by the verdict itself. The jury did place a percentage of fault on Cape. If the jury failed to understand the concept that a corporation may be liable for the acts of its employees, the jury presumably would have placed fault on "Others." It did not do so. The court's failure to instruct the jury that

a corporation may be liable for the acts of its employees is not reversible error.

[¶ 50]   We conclude the trial court did not commit reversible error in instructing the jury.

E

[¶ 51]   Praus argues the verdict was tainted by an unauthorized view of the accident scene by two jurors, thus warranting a new trial.

[¶ 52]   An investigator retained by Praus' trial counsel contacted juror Berg on June 2, 1999, and "asked her if she had inspected the scene of the accident." The investigator said in an affidavit, "Berg informed your Affiant in a telephone conversation that during the trial, she inspected the scene of the accident for the purpose of corroborating the testimony of eyewitness Kam Harstad." On June 4, 1999, Praus moved for an inquiry into the validity of the verdict under N.D.R.Ev. 606(b). On June 7, 1999, the investigator contacted juror Foltz and "asked him if he had inspected the scene of the accident prior to jury deliberations." The investigator reported, "Foltz informed your Affiant that during the trial, he inspected the scene of the accident to 'size up the situation and check the witness' testimony, to see if he could see from where he was at.'" Praus then brought a revised motion on June 8, 1999.

[¶ 53]   During the hearing on the motion, Berg testified she had driven through the intersection of Gateway Drive and Interstate 29, where the accident occurred, on the way to decorate graves in Park River. Berg also testified she did not stop at the scene, did not come to any conclusion as a result of her view of the accident scene, and did not report her findings to the other jurors during their deliberations. Foltz testified he drove through the inter-

section to "tr[y] to get a feel for the situation" and to determine if any of the witnesses who testified at trial had a clear view of the accident scene. Foltz also testified he did not stop at the scene and did not make any observations that related to any of the testimony in the case. Foltz said his observations "[c]onfirmed maybe some of my thoughts," but he did not form any opinion based on those observations. Foltz could not remember whether he had reported any of his findings or opinions to other jurors. The trial court ruled no "extraneous prejudicial information was improperly brought to the jury's attention" and denied Praus' request for a new trial.

[¶ 54] It is well settled "the fact that one or more of the jurors in a civil case made an unauthorized visit to the scene of the accident or other premises involved is not in and of itself prejudicial in the absence of a showing that it influenced or affected the verdict." Annot., *Prejudicial effect of unauthorized view by jury in civil case of scene of accident or premises in question*, 11 A.L.R.3d 918, 923 (1967). In *Keyes v. Amundson*, 343 N.W.2d 78, 82 (N.D.1983), this Court reversed a judgment dismissing the plaintiff's negligence action arising out of a motorcycle-automobile accident and remanded for a new trial, concluding the appellant had established prejudice by proof of juror misconduct where "at least two (and possibly three) jurors informed the rest of the jurors that they had investigated the scene of the accident over the weekend." The Court set forth the standard for the trial court to use in considering a N.D.R.Civ.P. 59(b)(2) and N.D.R.Ev. 606(b) motion for a new trial based on juror misconduct:

> Once the court determines from the affidavits that extraneous prejudicial information has improperly reached the jury or that outside influence was improperly brought to bear upon any juror, the court must apply an *objective* standard to determine its prejudicial effect. We hold that the appropriate standard is for the trial court to determine if there is a reasonable possibility that the extrinsic material could have affected the verdict, and, if so, a new trial is required. In so doing, the court is to consider the possible prejudicial effect on a hypothetical average jury.

*Keyes*, 343 N.W.2d at 85–86 (Emphasis in original; internal citations omitted).

[¶ 55] The Court noted five factors were particularly relevant in determining that juror misconduct had occurred: 1) the accident scene was related to the essential issue in the case; 2) one of the jurors who investigated the accident scene informed the other jurors it would have been difficult for the defendant to see oncoming traffic, thereby becoming, in effect, a defense witness in the jury room; 3) the trial court had previously denied a motion to have the jurors view the accident scene; 4) the unauthorized view was not a casual view, but was an intentional investigation of the scene to acquire additional information to report to the other jurors; and 5) the juror misconduct occurred after the case was submitted to the jury and while the jury deliberated, and was not discovered until after the verdict was rendered. *Keyes*, 343 N.W.2d at 86.

[¶ 56] In denying Praus' motion for a new trial, the court noted the differences between the facts in *Keyes* and the facts in this case:

> Primarily, Berg testified she had not told her fellow jurors of her glance at the accident scene. Foltz could not remember whether or not he told other jurors about driving through the intersection where the accident occurred. However, neither Foltz [n]or Berg stopped or got out of their vehicles to investigate. While Foltz did acknowledge he traveled through the intersec-

tion "to get a feel for the situation" he also testified he did not make any observations related to any of the testimony in the case. When asked whether he formed any opinions based on his observation at the scene, he testified: "None. Confirmed maybe some of my thoughts, but no." In addition, the jurors were already familiar with the intersection because of photographs introduced during trial and because the intersection where the accident occurred is the intersection of Highway 2 and I–29, a heavily traveled intersection in Grand Forks.

[¶ 57] Having reviewed the record, we conclude the trial court conducted an adequate hearing on the juror misconduct issue, and the trial court did not err in finding there was no reasonable possibility that the extrinsic material affected the jury's verdict. Praus was not entitled to a new trial for juror misconduct.[2]

### III

[¶ 58] When we review issues involving discretionary decisions by a trial judge, "we cannot supervise so closely as to insure a perfect trial." *Schwartz v. Ghaly*, 318 N.W.2d 294, 300 (N.D.1982). We conclude Praus received a fair trial.

[¶ 59] The judgment is affirmed.

[¶ 60] SANDSTROM, J., concurs.

NEUMANN, Justice, concurring in result.

[¶ 61] I concur in the result reached by the majority, although I agree with much of the dissent's analysis.

[¶ 62] For the reasons articulated in the dissent, I agree Brown and Edling should not have been allowed to participate in the trial, as a matter of law, and the trial court abused its discretion in denying severance. I also agree with the dissent that the trial court's erroneous analysis of the severance issue led to its erroneous grant of additional peremptory challenges. I part company with the dissent, however, as to whether this should constitute reversible error.

[¶ 63] There is no North Dakota case law telling us whether a showing of prejudice is required to obtain a new trial when one party is allowed too many peremptory challenges. However, under our harmless error rule, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." N.D.R.Civ.P. 61. Rule 59(b), N.D.R.Civ. P., specifies a new trial may be granted when a trial court's abuse of discretion prevents a party from receiving a fair trial and affects the substantial rights of the party.

[¶ 64] As acknowledged by the dissent, the cases from other jurisdictions are divided on whether a showing of prejudice is required to warrant a new trial when excessive peremptory challenges are erroneously granted. *See* G.R. Jacobi, Annotation, *Effect of Allowing Excessive Number of Peremptory Challenges*, 95 A.L.R.2d 957 (1964 & Supps.1993 & 2001). The majori-

---

**2.** We add a caveat. We do not encourage "losing parties to interview jurors with the hope that one or more of them may have made a casual remark in the jury room concerning some facet of the case not in evidence for the purpose of obtaining a new trial because of juror misconduct." *Keyes*, 343 N.W.2d at 87 (Vande Walle, J., concurring specially). Once evidence of possible juror bias is discovered, we believe the proper course of conduct is to notify the court and cease the investigation in order to reduce the possibility of juror taint from extrajudicial pressures. *See Andrews v. O'Hearn*, 387 N.W.2d 716, 734 n. 26 (N.D.1986). Questioning of the jurors should then be conducted by the trial judge. The investigator in this case improperly contacted another juror after Praus brought the motion for inquiry into the validity of the verdict.

ty rule seems to be that some showing of prejudice is required:

> The numerical weight of authority in civil cases supports the rule that a judgment will not be reversed for error in allowing one or more peremptory challenges in excess of that provided by statute, unless the complaining party shows that he has exhausted his peremptory challenges and has suffered material injury from the action of the court, and that as a result thereof one or more objectionable jurors sat on the case, or for some other equally cogent reasons.

*Id.* at 963. I am persuaded by the rationale of the jurisdictions aligned with the majority rule.

[¶ 65] The question, I believe, is whether Praus received a fair trial despite the trial court's erroneous allocation of peremptories. Edling and Brown were each allowed to strike two additional prospective jurors. Absent some basis to challenge them for cause, those jurors, in my opinion, should have been allowed to remain on the jury. However, Praus has no basis to complain as long as four unbiased people were selected in their places, and Praus has shown no reason to doubt this happened.

[¶ 66] A party has a right to an impartial jury, not to have certain individuals on the jury. Because I believe Praus received a fair jury, it is my opinion Praus's substantial rights were not affected, and I would deem the trial court's erroneous allocation of peremptory challenges harmless error.

[¶ 67] William A. Neumann

MARING, Justice, dissenting.

[¶ 68] I respectfully dissent from part II A and B and part III.

[¶ 69] Praus' amended complaint alleged Brown was vicariously liable as the employer of Mack and was itself negligent in failing to properly evaluate and monitor the construction site and in failing to make sure trucks it leased were equipped with functional reverse signal alarms. On October 31, 1997, Brown moved for summary judgment. On December 17, 1997, the trial court granted Brown's motion for summary judgment. The trial court concluded it was unrefuted that Mack was an independent contractor; that Mack was not an employee of Cape or Brown; that there was no evidence Brown had any control over Mack or supervised or inspected any part of Mack's work; that Brown was not vicariously liable for the negligence of Mack; and that Brown owed no duty to Praus. The court further found Praus' claims were "meritless and border[ed] on bad faith" entitling Brown to reasonable attorney fees and costs incurred in its defense of the claim. Praus, thereafter, facing Rule 11, N.D.R.Civ.P., sanctions, voluntarily dismissed her complaint against Brown. The trial court noted in its grant of summary judgment that Cape's cross-claim against Brown for indemnification was not dismissed.

[¶ 70] In 1987, our Legislature enacted comparative fault. *See* 1987 N.D. Sess. Laws ch. 404. The effect of the enactment of the comparative "fault" provisions of N.D.C.C. ch. 32–03.2 "was to significantly revise tort liability in this state to shift the focus from traditional doctrines to the singular, inclusive concept of fault." *Stewart v. Ryan,* 520 N.W.2d 39, 45 (N.D.1994) (citations omitted). "Section 32–03.2–02, N.D.C.C., clearly replaced the concept of joint and several liability with several allocation of damages among tortfeasors in proportion to the fault of those who contributed to an injury." *Id.* After the enactment of N.D.C.C. § 32–03.2–02, there is no joint liability among tortfeasors, absent

a claim of concerted action, and a sued tortfeasor cannot maintain a third-party claim for contribution against a tortfeasor not sued by an injured party. *Target Stores v. Automated Maintenance Services, Inc.*, 492 N.W.2d 899, 902 (N.D. 1992). Therefore, any liability of Brown or of Cape is several, not joint, because no concerted action is alleged.

[¶ 71] Cape, however, claims it is entitled to indemnification from Brown for any fault allocated to Cape. It bases this claim on a contractual indemnification clause which states:

> Subcontractor agrees to indemnify and hold Contractor harmless for, of and from, any loss Contractor may sustain by reason of Subcontractor's failure to comply with said laws, rules and regulations in connection with the design, manufacture and/or construction of machinery, accessories, parts and/or other goods and materials used on the above-named project. Subcontractor further agrees to indemnify and hold Contractor harmless for, of and from any loss Contractor may sustain by reason of subcontractor's failure to comply with any other federal, state and local laws, ordinances, and regulations issued with respect to occupational safety and health and applying to the above-named project.

[¶ 72] Construction of a contract is a question of law for a court. *Vanderhoof v. Gravel Products, Inc.*, 404 N.W.2d 485, 491 (N.D.1987). "It is almost universally held that an indemnity agreement will not be interpreted to indemnify a party against the consequences of his own negligence unless that construction is very clearly intended." *Bridston v. Dover Corp.*, 352 N.W.2d 194, 196 (N.D.1984).

[¶ 73] A review of the indemnification and hold harmless clause in Brown's subcontract agreement with Cape reveals that it does not require indemnification for Cape's own negligence, but only for Brown's "failure to comply with said laws, rules and regulations in connection with the design, ... or machinery, accessories, parts and/or ... used on the above-named project ..." or Brown's "failure to comply with any other federal, state and local laws, ... with respect to occupational safety and health and applying to the above-named project." The trial court having granted summary judgment to Brown concluded as a matter of law Brown's percentage of fault was zero. The only fault attributable to Cape was its own independent fault, and the indemnification agreement does not cover damages caused by Cape's own acts of negligence.

[¶ 74] In the cases in which our Court has concluded an indemnification provision includes the negligent acts of the indemnitee, the indemnification provision has contained language requiring the indemnitor to carry liability insurance with specified minimum limits and to name the other party as an additional insured. *Rupp v. American Crystal Sugar Co.*, 465 N.W.2d 614, 617 (N.D.1991); *Bridston*, 352 N.W.2d at 197.

[¶ 75] Here, the indemnification agreement unambiguously provides indemnity only for the acts of Brown and not for Cape's own acts and the trial court held as a matter of law there were no facts establishing Brown was at fault for the damages sustained by Praus. Because Brown had zero fault as a matter of law, Cape could not sustain a loss as a result of Brown's negligent acts.

[¶ 76] In addition, in denying Cape's motion for summary judgment, the trial court noted the general rule is that an employer is not liable for the acts or omissions of an independent contractor, but the doctrine of retained control "creates a separate basis of liability for the employer's

failure to exercise retained control with reasonable care." *Pechtl v. Conoco, Inc.,* 1997 ND 161, ¶ 11, 567 N.W.2d 813. It was undisputed Cape had a contract with the State of North Dakota to perform work on a federal aid construction project, which required Cape to retain control. The trial court concluded Cape did have control over the project and the amount of control and the amount of negligence was a question for the jury. Cape remained in this case because of evidence of its own acts of negligence. Under our comparative fault statute, Cape was severally liable for those acts.

[¶ 77] It was error for the trial court to permit Brown to participate in the tort action once Brown was determined to have zero fault. Praus argued to the trial court that the only issue left for Brown was whether Brown must indemnify Cape for Cape's fault and that was a question of law. There were no claims left between Brown and Praus or Brown and Cape requiring trial of factual issues. Brown's only interest in the case would be to defend Cape from liability. The trial court gave Brown two peremptory challenges and allowed Brown to cross-examine all of Praus' witnesses when its interests were not adverse to Cape and only aimed at making certain Cape was not found at fault. This was prejudicial to Praus and an abuse of discretion of the trial court.

[¶ 78] Edling was brought into this case by Cape on a third-party complaint. By virtue of the exclusive remedy provisions of the workers compensation statutes, an employer is immune from a suit by an employee and cannot be sued for contribution by a third-party tortfeasor. *Barsness v. General Diesel and Equipment Co., Inc.,* 422 N.W.2d 819, 822 (N.D. 1988); *Smith v. Vestal,* 494 N.W.2d 370, 373 (N.D.1992). We have recognized there are exceptions to the exclusive remedy rule, and one such exception "occurs when the employer enters into an express contract of indemnification between itself and the third-party tortfeasor." *Smith,* 494 N.W.2d at 375. In this case, Cape and Edling entered into an express indemnification contract which stated:

12. It is expressly understood and agreed that the SUBCONTRACTOR [Edling Electric Co.] will indemnify and hold harmless the CONTRACTOR [James Cape and Sons, Inc.] for all loss, damage, claim or injury from any act or omission of the SUBCONTRACTOR, their employees or agents for any injuries or damages, real or personal, sustained by their employees or agents.

26. ... Subcontractor agrees to indemnify and hold Contractor [James Cape and Sons, Inc.] harmless for, of and from, any loss Contractor may sustain by reason of Subcontractor's failure to comply with said laws, rules and regulations in connection with the design, manufacture and/or construction of machinery, accessories, parts and/or other goods and materials used on the above-named project. Subcontractor further agrees to indemnify and hold Contractor harmless for, of and from any loss Contractor may sustain by reason of Subcontractor's failure to comply with any other federal, state and local laws, ordinances, and regulations issued with respect to occupational safety and health and applying to the above-named project.

This indemnification and hold harmless provision is subject to the same analysis as the provision between Cape and Brown. It, also, unambiguously requires indemnification only for Edling's negligent acts and not for Cape's own negligent acts.

[¶ 79] Under comparative negligence, our Court concluded, where both an employer and a third-party tortfeasor negligently cause an employee's injuries, liabili-

ty will be imposed on the third party and the employer, and the plaintiff-employee's recovery against a third-party tortfeasor will not be reduced by the percentage of negligence attributable to the plaintiff's employer because it is contrary to the doctrine of joint liability. *Layman v. Braunschweigische Maschinenbauanstalt,* 343 N.W.2d 334, 350 (N.D.1983). However, after the enactment of comparative fault and the abolishment of joint liability, the plaintiff can no longer recover from the third party the damages represented by the percentage of fault attributed to the employer. N.D.C.C. § 32–03.2–02 ("each party is liable only for the amount of damages attributable to the percentage of fault of that party, . . .").

[¶ 80] Consequently, Cape could not incur any loss by reason of Edling's fault, because whatever percentage the jury allocated to Edling could not be recovered by Praus from Cape. Any percentage of fault allocated to Cape would be for Cape's own independent acts.

[¶ 81] Edling was in this case only because of Cape's claim of indemnification based on the express agreement. Edling and Cape, however, did not have any adverse interests. Edling was immune from liability because of the workers compensation exclusive remedy and Cape had no liability for any allocation of fault to Edling. Edling had no liability under the indemnification agreement for the independent acts of negligence of Cape. Edling's only interest was not adverse to Cape and clearly was to make certain Cape was not found at fault.

[¶ 82] The trial court granted Edling two peremptories and permitted Edling to fully participate in the cross-examination of Praus' witnesses when there was no claim between Praus and Edling and no adverse interest between Cape and Edling.

[¶ 83] In summary, because we have abolished joint liability and there is no claim of concerted action, and there is no vicarious liability, the only indemnification available to Cape is for the independent acts of Cape. Therefore, there is no adverse interest between Cape and Brown or Cape and Edling on any factual issue. None of these parties would want Cape found at fault. The result was that three parties spoke at trial for Cape's position. Although I am of the opinion there are no indemnification agreements for Cape's own negligent acts, even if the agreements were construed to provide such, it does not change the fact there is no adverse interest to entitle Brown or Edling to participate in this trial. The only adverse interest between those parties was a question of law.

[¶ 84] Praus argues it was an abuse of discretion resulting in prejudice for the trial court to deny severance and grant defendants additional peremptory challenges when the only issue between the defendants was a question of law.

[¶ 85] Cape, in its return in opposition to Praus' motion to sever the indemnity claims, argued, because the case was governed by comparative fault and the jury would decide the "fault" of Edling and Brown, severance was not proper. On January 7, 1999, the trial court entered an order denying Praus' motion to sever the indemnity claims brought by Cape against Edling and Brown. The trial court agreed with the argument of Cape that "[c]omparative fault requires that the jury be allowed to consider fault of all parties and non-parties, depending upon the evidence presented" and "[t]he Rules of Civil Procedure are intended and designed to facilitate the resolution of all claims arising from a single incident in a single trial."

[¶ 86] However, the only party whose fault was of any consequence to Cape,

Brown, and Edling was Cape's fault. Brown's and Edling's participation in the defense of Cape at trial was not justified under comparative fault or the indemnification agreements. In addition, even assuming arguendo Brown could be liable under the indemnification agreement to Cape for Cape's failure to comply with an OSHA regulation, there would have had to have been a second trial to determine what percentage of Cape's liability was attributed to Brown's failure to comply with OSHA, because the verdict form submitted to the jury did not answer that indemnification claim.

[¶ 87] Our Court has said "[a] trial court abuses its discretion when it acts arbitrarily, unconscionably, unreasonably, or when it misinterprets or misapplies the law." *Cline v. Cline*, 1998 ND App 11, ¶ 7, 585 N.W.2d 145. We have explained "a trial court acts in an arbitrary, unconscionable, or unreasonable manner when the exercise of discretion is not the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Id.* The trial court's stated basis for denying severance of the indemnity claims that "comparative fault requires the jury be allowed to consider fault of all parties and non-parties, depending upon the evidence presented" was not "a reasoned and reasonable determination" based upon the undisputed facts in the record, the indemnification agreements, and the law of comparative fault, several liability and workers compensation as an exclusive remedy. In fact, there is no analysis of why Brown and Edling would have any right under comparative fault, several liability, workers compensation law or the indemnification agreements to participate in the factual determination of the fault of Cape.

[¶ 88] As the majority opinion points out in 8 *Moore's*, at § 42.10[4][a] p. 42–17, the authors state that for courts considering consolidation " 'the benefits of efficiency can never be purchased at the cost of fairness.' Courts have employed a balancing test to determine whether consolidation serves the interests of justice. In weighing the interests ... courts have found fairness must be paramount." (Citation omitted.) The participation of Brown and Edling gave Cape an unfair advantage over Praus at trial.

[¶ 89] The trial court abused its discretion when it refused to sever the indemnification claims, which only involved a question of law.

[¶ 90] In addition, the trial court granted additional peremptory challenges to Cape, Mack, Edling and Brown. The result was that the trial court granted Praus six peremptory challenges and the defendants a total of eleven peremptory challenges. This allowed the defendants almost a two-to-one advantage in the selection of the jury. The majority correctly states that under Rule 47(b), N.D.R.Civ.P., if a side consists of more than one party, that side is entitled to a total of four peremptory challenges and only "[i]f parties on a side have essentially adverse or antagonistic interests" may the trial court grant the parties on that side additional peremptory challenges.

[¶ 91] As previously set forth, there was not a claim between Praus and Edling nor an adverse interest between Cape and Edling. Brown's interests also were not adverse to Cape. The only adverse issue was a question of law.

[¶ 92] The trial court's erroneous analysis of the severance issue appears to have led to its erroneous grant of additional peremptory challenges. Whether the two abuses of discretion by the trial court cumulatively are harmless error or reversible

error is the next step in the proper analysis of this case. There appears to be a split of authority in the various state jurisdictions whether peremptory allocation error must be accompanied by actual prejudice.[3] Anno., *Effect of allowing excessive number of peremptory challenges*, 95 A.L.R.2d 957 (1964 & Supps.1993 & 2001). I am persuaded by those jurisdictions that conclude such error is reversible as a matter of law. *Id.* at § 4[a]. The Utah Supreme Court's analysis is instructive:

> To avoid favoring one side of a lawsuit over another, a trial judge must carefully appraise the degree of adverseness among co-parties and determine whether that adverseness truly warrants giving that side more challenges than the other.
>
> . . . .
>
> When, however, a cross-claim is merely a derivative of the original action, such as a cross-claim for indemnification or contribution, a "substantial controversy" does not exist for the purposes of Rule 47.
>
> . . .
>
> A side that has additional peremptory challenges has the opportunity to shape the jury to its advantage. . . . Requiring a party to show prejudice in such circumstances is to require the impossible. "To show actual prejudice, the complaining litigant would be required to discover the unknowable and to reconstruct what might have been and never was, a jury properly constituted after running the gauntlet of challenge[s] performed in accordance with the prescribed rule of the game." *Blades v. DaFoe*, 704 P.2d

317, 322 (Colo.1985) (quoting *Kentucky Farm Bureau Mut. Ins. Co. v. Cook*, 590 S.W.2d 875, 877 (Ky.1979)). Accordingly, we hold that it was prejudicial error for the trial court to grant UDOT and Salt Lake County six peremptory challenges.

*Randle v. Allen*, 862 P.2d 1329, 1333–34 (Utah 1993).

[¶ 93] The Supreme Court of Nebraska quoting the Supreme Court of Kentucky explained:

> As long as [peremptory challenges are] part of the trial process . . . we believe that their proper allocation between litigants is a substantial right which so pervades the process that its erroneous application requires reversal as a matter of law if the issue is properly preserved by the adversely affected litigant. *Kentucky Farm Bur. Mut. Ins. Co. v. Cook*, 590 S.W.2d 875, 877 (Ky.1979).

*Gestring v. Mary Lanning Mem'l Hosp.*, 259 Neb. 905, 613 N.W.2d 440, 450 (2000). *See also Koustas Realty v. Regency Square P'ship*, 724 P.2d 97, 99 (Colo.App. 1986) (granting excess peremptory challenges is reversible error even if no prejudice results); *Davenport v. Ephraim McDowell Mem'l Hosp.*, 769 S.W.2d 56, 59 (Ky.App.1988) (granting two non-antagonistic defendants six peremptory strikes is reversible error as a matter of law); *King v. Special Res. Mgmt.*, 256 Mont. 367, 846 P.2d 1038, 1042 (1993) (showing of prejudice is not required when additional peremptory challenges are improperly granted); *Moore v. Jenkins*, 304 S.C. 544, 405 S.E.2d 833, 835 (1991) (holding that allowing multiple defendants each to exercise a full set of peremptory strikes while accord-

---

**3.** Justice Neumann concludes in his special concurrence that the majority rule seems to be that some showing of prejudice is required. I respectfully disagree. Justice Neumann quotes from the annotation, *Effect of allowing excessive number of peremptory challenges*, 95

A.L.R.2d 957, 963, which was compiled in 1964 and which is admittedly based on "[t]he numerical weight of authority." I would suggest the modern trend is reflected in recent cases, which have more persuasive rationales.

ing only one set of strikes to plaintiff is prejudice as a matter of law); *Carrier v. Pro–Tech Restoration,* 944 P.2d 346, 353–54 (Utah 1997) (presuming trial court's erroneous allocation of peremptory challenges results in prejudice as a matter of law); *Wardell v. McMillan,* 844 P.2d 1052, 1059 (Wyo.1992) (stating erroneous failure to grant additional peremptory challenge for alternate juror constitutes reversible error even without a showing the jury actually prejudiced the case). This position is consistent with our conclusion that it is prejudicial error for litigants to be required to use peremptory challenges to remove jurors who should have been removed for cause. *Sand v. Queen City Packing Co.,* 108 N.W.2d 448, 453–54 (N.D. 1961).

[¶ 94] I conclude the trial court abused its discretion in failing to sever the indemnification claims and granting additional peremptory challenges causing prejudice to Praus' right to a fair trial. I would reverse and remand for a new trial with the indemnification claims, if any exist, severed.

[¶ 95] VANDE WALLE, C.J., concurs.